People of the State of Illinois, Plaintiff-Appellee, v. Ted Hayes, Defendant-Appellant.

Gen. No. 50,450.

First District, First Division.

April 3, 1967.

Neil H. Adelman, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James Zagel, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

After a bench trial, defendant was found guilty of unlawful possession of a narcotic drug, and he was sentenced to two to five years. On appeal, he contends his motion to suppress evidence was erroneously denied, and that he was not proved guilty beyond a reasonable doubt.

The evidence shows that on March 20, 1964, at 8:00 a. m., four Chicago police officers were conducting a surveillance of the washrooms of the DuSable Hotel in Chicago, looking "for addicts who subject themselves off the hallway there." Police Officer Lartheran Lawson testified that while he was standing on the third floor, he saw the door of room 317 open, and he observed a man, identified by him as the defendant, Ted Hayes, "standing at the dresser with a hypodermic outfit in his hand." The officer entered the room and "grabbed the outfit from his hand." He turned and saw three more persons in the room and "noticed three tinfoil packs on the floor" about a foot away from defendant. Of the other men, the nearest one to the defendant was about four feet.

The officer further testified there were two more "hypodermic outfits" in the room, and he saw several other objects connected with the use of narcotics: a cooker for preparing heroin for injection, and three hypodermic needles and eyedroppers. The cooker and one needle were found on the dresser near which the defendant was standing when arrested. All of the occupants of the room were arrested, and they denied ownership of the tinfoil packets and the other objects. The contents of one of the tinfoil packets was field tested by the officers while at the hotel, and it was found to be "positive."

The objects found in room 317, including the three tinfoil packets, were taken by Officer Lawson to the

402

Crime Laboratory and returned by the laboratory to him on March 21, 1964, in a sealed envelope. He opened the envelope in court and identified the objects contained in it as the items found in room 317 on March 20, 1964. Officer Lawson further stated that the defendant told him he had rented the room because he and his wife had separated, but he was not staying there on March 20th and had lent the room to Nick Stewart.

After the items found in room 317 were identified by Officer Lawson, defendant made a motion to suppress the evidence on the theory that the search was made without a warrant and unreasonable because the alleged "hypodermic outfit" seen by the officer in the hand of the defendant was a medicine dropper (eyedropper) and not a "hypodermic outfit." After a consideration of the evidence and the arguments of counsel, the court denied the motion and later received in evidence all of the exhibits identified as being seized at the time of defendant's arrest in room 317, which included the three tinfoil packets.

The evidence for the prosecution consisted of the testimony of Officer Lawson, a stipulation that the testimony of the other officers would be the same as that of Lawson, the exhibits found in room 317 and covered by the testimony of Officer Lawson, and a stipulation that "three foil packets" were submitted to the Chicago Police Crime Detection Laboratory, and the contents of one was found to be heroin.

Defendant testified that he was arrested in room 317 on March 20, 1964, by Officer Lawson; that he rented the room on March 17th, because he had separated from his wife, and he slept there one night and part of the next day; that he told the clerk he was going back to his wife, and that he was going to let Nick Stewart occupy the room. He said he went up to the room to tell Nick that the clerk would not take the room out of

his name until the week was up, and "when I entered the room, there was five 'junkies' in there shooting dope. I told them they would have to get out of the room because the room was still in my name even though I gave it to Nick. We had a big argument. So I told Nick that he would have to take his bunch out of the room. As he opened the door to do as I suggested, this officer and the rest barged into the room. That is how the door became open. . . . When they came in, he found the packages on the floor under Jack Trent."

A defense witness, an employee of the DuSable Hotel, testified that on March 20, 1964, she rented room 317 to defendant, and at about nine o'clock on the morning of the 20th, defendant told her he had turned the room over to Nick Stewart, but she did not change the name of the occupant from Hayes to Stewart until March 24th, when "Mr. Hayes's rent was up."

Considered first is defendant's contention that "the unauthorized entry into and search of room 317 were not incident to a lawful arrest since the arrest, based solely on the officer's viewing of defendant's holding of an eyedropper, was not based on probable cause. The Fourth and Fourteenth Amendments, as well as Article II, Section 6 of the Illinois Constitution, therefore, required exclusion of the evidence obtained as a result of the search. Failure to so exclude this evidence requires reversal of defendant's conviction." Authorities cited include Henry v. United States, 361 US 98 (1959); Brinegar v. United States, 338 US 160 (1949); Johnson v. United States, 333 US 10 (1948).

In Henry v. United States, it was held that the act of loading cartons into an automobile did not constitute probable cause for the arresting officers to believe that defendants had committed a theft, even though it was later proved that the cartons had been stolen. On p 104, the court said:

"The fact that packages have been stolen does not make every man who carries a package subject to arrest nor the package subject to seizure. The police must have reasonable grounds to believe that the particular package carried by the citizen is contraband."

From this defendant argues: "[W]e submit that the fact that an eyedropper may be used to inject narcotics does not make every man who holds an eyedropper subject to arrest nor the eyedropper subject to seizure. The police must have reasonable grounds to believe that the particular eyedropper held by a citizen is being used for injecting narcotics. . . . [Officer Lawson] might have had a suspicion, but he could not have had a reasonable belief. Probable cause was wholly lacking."

The State accepts defendant's authorities but disputes defendant's analysis of the facts and his application of the law to those facts. The State argues there was no search in the present case. All of the contraband seized was in open view of the police officers once they entered room 317, and the only question is whether the entry of the officers was justified.

The State argues that when experienced police officers, assigned to narcotic duty and on patrol in a hotel frequented by narcotic addicts, see through an opened door a man "standing at the dresser with a hypodermic outfit in his hand," those officers have a sufficient and reasonable basis for the belief that the man in question was committing a crime, even though the object in his hand was later found to be an eyedropper. We agree. The officers who were seeking Narcotic Act violations were familiar with the "hypodermic outfit" used by narcotic addicts, and its essential parts. What they believed they saw through the door opened by one of the room inmates, a "hypodermic outfit" in defendant's hand, although an essential part

405

(the needle) was missing, was sufficient for them to reasonably believe that a criminal offense had been or was being committed, and that defendant was the person who had or was committing it. As said in People v. Barbee, 35 Ill2d 407, 220 NE2d 401 (1966), at p 411:

> "[T]he legality of the conduct of the officers in this case is to be determined upon an appraisal of the situation that confronted them, and not upon the success or lack of success of their efforts."

Also, reasonable cause to make an arrest does not require that quantum of proof necessary to sustain a conviction. (People v. Novak, 33 Ill2d 343, 346, 211 NE2d 235 (1965).) We hold, therefore, that the officers were lawfully present in the room where the tinfoil packets were seen on the floor and seized by them. It is not a search to observe that which is open to view (People v. Davis, 33 Ill2d 134, 138, 210 NE2d 530 (1965)), and the officers were not required to overlook the packets, known to them to be a type of container used for the dispensing of narcotic drugs. We conclude the court properly denied the motion to suppress this evidence.

Defendant next contends that this record is "completely barren" of proof that the alleged narcotics "were in the immediate and exclusive control of defendant." (People v. Nettles, 23 Ill2d 306, 307, 178 NE2d 361 (1961).) Defendant argues that Officer Lawson did not see defendant throw or drop the packets on the floor, and defendant denied ownership and the others present were narcotic addicts.

It is undisputed that defendant rented room 317 and was found in it on March 20th, although he testified that he was not using the room and had turned it over to Nick Stewart. In People v. Nettles, 23 Ill2d 306, 308, the court said:

"We are of the opinion, therefore, that where narcotics are found on the premises under the control of defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of narcotics, absent other facts and circumstances which might leave in the mind of the jury, or of the court where a jury is waived, a reasonable doubt as to his guilt. . . . The requirement that defendant's guilt be proved beyond a reasonable doubt does not mean that the court may disregard the inferences that flow from the evidence before it."

■ Applying these principles here, we believe the trial court was presented with facts and circumstances sufficient to find defendant guilty of unlawful possession of narcotics beyond a reasonable doubt.

■ Finally, defendant contends that the State failed to prove that the substance in the tinfoil packets was narcotic, and that the trial stipulation entered into "completely failed, however, to relate the packets and powder analyzed at the laboratory to the tinfoil packets seized in room 317 and admitted into evidence." Cited in support is People v. Judkins, 28 Ill2d 417, 420, 192 NE2d 848 (1963), where the facts and stipulation were somewhat similar. The instant stipulation was as follows:

"If Charles Vondrak of the Chicago Police Crime Detection Laboratory were called, he would testify that Patrolman L. Lawson of the 2nd District submitted the following exhibit to the laboratory for examination: three foil packets, one tested containing thirteen hundred grams of unknown white powder hereinafter referred to as Exhibit Q–1. . . .

■■■■■■

Exhibit Q–1 is diacetyl morphine hydrochloride, commonly referred to as heroin. And that these were the items that were submitted to the Chicago Crime Laboratory by Patrolman L. Lawson, Officer Lawson."

The record shows that Officer Lawson testified it was he who took the exhibits identified by him and received in evidence, to and from the Crime Laboratory. We note, also, that the stipulation stated that "these were the items that were submitted to the Chicago Crime Laboratory by Patrolman L. Lawson, Officer Lawson." It is a fair inference that the last sentence of the stipulation was intended to mean the "three foil packets" identified by Officer Lawson as having been found in room 317 on March 20th. We believe the record here shows the required continuity of possession and positive identification of a narcotic drug. See, also, People v. Davis, 33 Ill2d 134, 210 NE2d 530, where the court held that a somewhat similar set of facts showed sufficient continuity of possession so as to establish a narcotic drug, and said (p 139):

"No question was raised as to the identity of the parcels in the trial court. Under previous decisions of this court such proof is sufficient to complete the State's case."

For the reasons given, we conclude that defendant was proved guilty beyond a reasonable doubt of the possession of a narcotic drug, as charged. Therefore, the judgment of the Criminal Division of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN and ADESKO, JJ., concur.