**People of the State of Illinois, Plaintiff-Appellee, v. James B. Hyman, Defendant-Appellant.**

**Gen. No. 50,949.**

First District, First Division.

June 24, 1968.

Rehearing denied July 26, 1968.

Hugh M. Matchett, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ADESKO delivered the opinion of the court.

Defendant was indicted for the unlawful possession of a narcotic drug. He waived his right to trial by jury, was found guilty in a bench trial and sentenced to the Illinois State Penitentiary for a term of not less than two, nor more than four years. Defendant now prosecutes this appeal raising five issues:

1. The denial by the trial court of his two motions to suppress the admission into evidence of a bag containing nine packets of heroin deprived him of his State and Federal constitutional rights against unreasonable search and seizure and arrest;

2. The failure of the trial court to advise him when he took the stand in his own defense that any admission he might make could be used against him deprived him of his State and Federal constitutional rights;

3. Taking the stand in his own defense at the request of his attorney did not waive his constitutional rights not to testify against himself;

4. The failure of his court appointed counsel to advise him of his right not to testify against himself was a violation of his constitutional rights to be competently represented by counsel; and

452

5. His testimony on the stand that the heroin was in his possession was insufficient either standing alone or in conjunction with other legal evidence to sustain the conviction.

Prior to, and at the trial, defendant moved to suppress nine tinfoil packages of heroin which were seized at the time he was arrested. At the hearing on his motion, the two arresting police officers testified that a reliable informer met them at about one o'clock in the morning on February 27, 1964, and informed them that a man named "Hymie" was selling narcotics at the New Orleans Hotel. The informer requested the officers to meet him at 1:30 a. m., and he would tell them the room number. The police officers met the informer at the appointed time and he gave them the room number as 21–1. This informer had been used five times in the past and his information had led to three convictions, the other two cases still pending.

The officers went to the hotel and walked into the lobby. The hotel clerk, by pushing a buzzer, let them into the common hallway whereupon the officers went to the second floor. The door leading to the common corridor on the second floor was locked and the hotel clerk, by use of a key, opened the door permitting them to enter the second floor. The officers went to room 21–1 and looked through a half-inch crack in the door. In the room they saw a man with his sleeve rolled up and a hypodermic needle in his hand. The officers pushed the door open. The defendant, James Hyman, was standing near the bed. One of the officers saw Hyman throw a bag behind the bed. Upon being retrieved, it contained the nine tinfoil packages. The defendant was then placed under arrest.

At the trial, the officers again testified to substantially the same facts that they testified to on the motion to suppress. In addition, they testified that the nine packages were delivered to the crime laboratory for testing.

By stipulation the contents of the packages were proven to be heroin. The officers further testified that the lock on the hotel room door was broken and that they entered the room simply by pushing the door open.

The manager of the New Orleans Hotel and the desk clerk both testified on behalf of the defense. They corroborated the officers' testimony that they led the officers up to the second floor and unlocked the door leading to the second floor corridor. There were three apartments located off the corridor on the second floor.

Defendant's former girl friend also testified in his behalf. She was living with Hyman at the time of the arrest and was in the apartment that evening. She testified that the door had a lock on it and that the officers kicked the door open. She denied that Hyman threw anything on the floor when the officers came in.

The defendant testified on his own behalf. He informed the court of his prior felony convictions, including sale of narcotics. He then testified that on the evening in question the officers kicked open his door and came into his room in the New Orleans Hotel. Defendant claimed that the officers found the narcotics under the mattress and that these narcotics were for his own personal use. He had been a dope addict, on and off, since 1939. He permitted narcotics users to come to his room to take dope, in exchange for which they would give him narcotics for his own use. The defendant denied that he was engaged in selling any narcotics or that he threw anything on the floor as the officers came into the room.

Defendant's first point is that the search of his apartment and seizure of narcotics violated his constitutional rights. The arresting officers received information from a reliable informer that narcotics were being sold in a particular room of the New Orleans Hotel. The reliability of the informant was sufficiently established by their testimony. McCray v. Illinois, 386 US 300 (1967);

People v. Nettles, 34 Ill2d 52, 213 NE2d 536 (1966); People v. Mack, 12 Ill2d 151, 145 NE2d 609 (1957). ■ By looking through a crack in the door, the officers observed a person preparing to inject narcotics into his arm. Armed with the informant's information and their own observation, the officers were permitted to enter defendant's room. People v. Hayes, 81 Ill App2d 400, 226 NE2d 517 (1967). Under these circumstances their search of the room was lawful and the motion to suppress was properly denied.

Defendant argues that the officers had no right to be in the common corridor serving the three or four apartments on the second floor of the hotel. Relying on People v. Bankhead, 27 Ill2d 18, 187 NE2d 705 (1963), he argues that the hotel clerk had no right to permit the officers to enter the second floor area. In Bankhead, the Supreme Court dealt with a situation where police officers had no reasonable basis upon which to justify a search without a warrant. Consequently, the act of the hotel clerk permitting the officers to enter the room of the defendant was held not to constitute a waiver by the defendant of his constitutional right against an unreasonable search. The decision in Bankhead was based on Johnson v. United States, 333 US 10 (1948). There also, the United States Supreme Court stated that the situation would not justify a search without first obtaining a warrant.

In the instant case, the police officers had sufficient information prior to their arrival at the hotel upon which to make an arrest and conduct a search. People v. Tillman, 1 Ill2d 525, 116 NE2d 344 (1953). Thus, neither Bankhead nor Johnson are applicable to the instant situation, and the admission of the police officers to the common corridor on the second floor did not waive any constitutional rights of the defendant.

■ The testimony of the police officers as to their observations and the lawful seizure of nine packages of heroin appears to us to be sufficient evidence beyond a reasonable doubt upon which to sustain the conviction of the defendant. This is true even if we believe defendant's theory that the narcotics were found under the mattress. Thus, the fact that a defendant took the stand on his own behalf and admitted that the narcotics belonged to him would not change the determination of guilt.

■ Trial counsel's decision to have defendant take the witness stand was essentially a matter of judgment and trial tactics. Defendant's court appointed counsel on this appeal hints at the fact that this decision rendered the defense incompetent. The record sufficiently demonstrates that trial counsel was well acquainted with trial procedure in criminal matters and exercised his best judgment in placing the defendant on the stand. It has been noted that in his testimony, defendant admitted to a prior conviction for sale of narcotics. As a subsequent offender he was subject to imprisonment for any term for five years to life. Defense counsel argued that the case against the defendant was weak and the court should take into consideration that, despite the defendant's long arrest record, he took the stand in his own defense. The judge then sentenced the defendant to two to four years in the State penitentiary.

■ ■ Consistent with our view that the evidence, excluding defendant's testimony, was sufficient to sustain the conviction, we believe beyond a reasonable doubt that defendant was not prejudiced by taking the stand in his own defense. It is therefore unnecessary for us to consider the issues raised by defendant's appointed appellate counsel with regard to a failure of the record to disclose that the trial judge and trial counsel advised

him of his right not to testify against himself. Chapman v. California, 386 US 18, 24 (1967) ; People v. Smith, 38 Ill2d 13, 230 NE2d 188 (1967).

The judgment of the Circuit Court of Cook County, Criminal Division, is affirmed.

Judgment affirmed.

BURMAN, P. J. and MURPHY, J., concur.