(No. 36692.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* OVERTON JUDKINS, Plainitff in Error.

*Opinion filed September 27, 1963.*

HOWARD T. SAVAGE, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and EDWARD J. HLADIS and MARVIN E. ASPEN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The defendant, Overton Judkins, together with Calvin McNeal, was charged in a three-count indictment with unlawfully selling, possessing and dispensing narcotics. In a second indictment returned on the same date they were also charged with conspiring to unlawfully sell and dispense narcotics to one Gladys Anderson. The defendant waived a jury and was tried before the court and found guilty of the unlawful sale of narcotic drugs. He was sentenced to a term of not less than ten years nor more than ten years and one day. On motion of the defendant the court entered a finding of not guilty on the conspiracy charge. The codefendant, McNeal, pleaded guilty to the charge of unlawfully possessing drugs and, after Judkins's trial, was sentenced to a term of not less than two nor more than five years.

Chicago police officer Thomas Bingham testified that on August 31, 1960, he gave $20 in marked money to Gladys Anderson after searching her outer clothing. That thereafter Gladys got into an automobile with her boy friend, Porter Jones, and was driven to 60th Street and Cottage Grove Avenue in Chicago. The police officers followed and one of them observed Miss Anderson make a telephone call at a booth outside a gas station. Following this she and her boy friend drove into an alley in the rear of 6638 S. Kimbark Avenue, again being followed by the police officers.

When the car stopped, Calvin McNeal approached the

car and had a conversation with Miss Anderson. He stuck his arm into the car through the window, then withdrew it and went back to a second-floor apartment in the building at 6638 S. Kimbark. Miss Anderson then handed four brown paper packets to officer Saich.

Officer Saich field tested the white powder contained in one of the packets and the indication was that it might be a derivative of opium. After this test the police entered the apartment on Kimbark Avenue and placed McNeal under arrest. They searched him and found on his person the marked money previously given to Miss Anderson. The police officers stayed in the apartment and approximately two hours later the defendant, Overton Judkins, returned and was arrested.

The codefendant, Calvin McNeal, testified that he lived in the second-floor apartment at 6638 S. Kimbark with the defendant Overton Judkins and Judkins's mother. He admitted that he was a dope addict and had previously been convicted of robbery. He further stated that on the morning of August 31, 1960, he answered the telephone at Judkins's apartment and had a conversation with Miss Anderson concerning the purchase of narcotics. This conversation he repeated to Judkins and informed Judkins "that she wanted to get four packets of narcotics". According to McNeal, Judkins then said that he would give the narcotics to her. McNeal stated that he did not know exactly where in the apartment the packets of narcotics were kept but that Judkins told him where to get them. McNeal further testified that he sold narcotics for Judkins regularly in return for being supplied with narcotics himself.

The defense presented only one witness, officer Bingham, who testified as to the time the call was made by Miss Anderson to the Judkins's apartment. The defendant did not testify.

The defendant's first contention is that the judgment must be reversed because it was not proved that the powder

contained in the packages delivered to Miss Anderson was in fact heroin.

Officer Bingham testified that the four packets introduced into evidence collectively as People's exhibit 1C were the same ones handed by Miss Anderson to officer Saich. He testified that following McNeal's apprehension and Saich's field test, these four packets were placed into another envelope, exhibit 1A, which was sealed and taken by Saich on August 31, to the crime laboratory. He further testified as to certain identifying initials placed on the envelope by Saich and stated that the four packets were in the same condition at the trial as when originally placed in the larger envelope, which itself had subsequently been opened. It also appeared that another small brown envelope marked 1B had been placed into the envelope designated exhibit 1A, the presence of which smaller envelope was not in any way explained at the trial. Exhibits 1A, 1B, and 1C were all taken at the trial from a larger sealed envelope, exhibit 1, which exhibit Bingham testified was at the crime laboratory on September 1, 1960, and, except during a prior hearing, was thereafter retained by the custodian of the Chicago Police Department until the date of the trial.

Immediately following Bingham's testimony it was stipulated between the parties "that if Charles Vondrak, chemist for the Chicago Police Crime Laboratory, were called to testify, he would testify that on August 31, 1960, officer Saich submitted to the laboratory for identification four packets containing a quantity—one tested 0.127 grams of white powder hereafter referred to as exhibit Q1; it was as follows: exhibit Q1 is a diacetyl morphine hydrochloride commonly referred to as heroin." No reference is made in the stipulation to exhibit 1C, and no relation between any of the exhibits received into evidence and exhibit Q1 referred to in the stipulation was shown by any evidence. Besides the field test, no further evidence of any chemical test of the powder contained in the four packets purchased

by Miss Anderson was offered. There is, therefore, no proof in the record that the substance the defendant was alleged to have sold was in fact narcotics as charged in the indictment, and the judgment of conviction must be reversed. *People* v. *Williams,* 25 Ill.2d 562.

It therefore will not be necessary to consider defendant's other contentions. The judgment of the criminal court of Cook County is reversed and the cause remanded to that court.

*Reversed and remanded.*