The People of the State of Illinois, Defendant in Error, v. Calvin Daniels, Plaintiff in Error.

Gen. No. 49,543.

First District, Fourth Division.

July 1, 1964.

Roger D. Ericson, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney, of Cook County, of Chicago (Elmer C. Kissane and Paul A. O'Malley, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE McCORMICK delivered the opinion of the court.

The defendant, Calvin Daniels, filed a writ of error in the Supreme Court of Illinois to review a judgment

of the Criminal Court of Cook County finding him guilty of the unlawful sale of narcotics and imposing a sentence of ten years to ten years and one day. The Supreme Court of Illinois transferred the case to this court. In this court the defendant asks that the conviction be reversed, and as grounds therefor he contends that the evidence is insufficient to prove beyond a reasonable doubt either that he participated in an alleged sale of narcotics or that the substance produced in evidence as narcotics was the same substance which was allegedly sold by him.

Two police officers, Sterling Watson and Joseph Wilburn, testified for the State. Their testimony was that on March 24, 1962, at approximately 3:30 a. m., they were in the vicinity of 39th Street and Cottage Grove Avenue in the City of Chicago. There they met one Margaret Wilson, and went with her to 805 East 39th Street. The woman introduced Officer Watson, under an assumed name, to one Phillip Sanderson. Watson told Sanderson he wished to make a $5.00 purchase of narcotics, and he handed a $5.00 bill, the serial number of which had been recorded by Wilburn, to Sanderson in the presence of the woman. Thereupon, the defendant, Daniels, joined the group, and Sanderson said something to him which Watson did not hear, and Daniels left. Watson and Sanderson then went inside a restaurant located at 805 East 39th Street, and sat down at a table. Watson testified that about five minutes later Daniels entered the restaurant and joined them; that all three men went to a booth in the restaurant and seated themselves; that Sanderson and Daniels were on one side of the booth and Watson was seated on the other side, next to an unidentified man. Watson stated that he asked Sanderson if he had the narcotics and Sanderson whispered something to Daniels, and Watson then observed Daniels hand Sanderson a small tinfoil package

110

about the size of a five-cent coin. The transfer was made slightly below the level of the table in the booth where the men were sitting, although Watson testified that he could see the transfer. Sanderson then handed the package to Watson who immediately pulled his revolver and placed Sanderson and Daniels under arrest. As Watson stood up and moved out of the booth he saw Sanderson drop a $5.00 bill on the floor, which was never recovered. Officer Wilburn then entered the restaurant and Sanderson and Daniels were taken outside. Wilburn testified that he searched both men and on the person of Daniels he found four tinfoil packets, and that afterwards he received an additional tinfoil packet from Watson, and that when he searched Sanderson he found no narcotics on him.

Wilburn made a field test of the packet given him by Watson and placed the four packets he had taken from Daniels, together with the packet given to him by Watson, in an envelope which he sealed and on which he wrote his name, which envelope, with its contents he delivered to the police crime laboratory.

The defendant here contends that the evidence is insufficient to prove that he participated in the alleged sale of the narcotics drug in that the testimony of the two police officers is contradictory, doubtful and self-impeaching. At the trial Daniels denied that Sanderson had told him to obtain any narcotics. He denied that he had handed Sanderson a tinfoil packet or that any other packets were found on his person when he was searched. The defendant particularly attacks Officer Watson's testimony inasmuch as after he had testified that he saw Daniels hand to Sanderson a tinfoil packet which was about the size of a nickel, on cross-examination he could not recall which hand Daniel used to transmit the packet to Sanderson or with which hand Sanderson passed the packet to him, and

that he could not be sure that the packet Daniels handed to Sanderson was the packet Sanderson handed to him. However, he did testify that he saw a tinfoil packet about the size of a nickel pass between Daniels and Sanderson; that he saw Daniels hand the packet to Sanderson; that Sanderson then handed the packet to him, and that when the packet was handed to him he put it in his pocket and kept it there until he later gave it to Wilburn.

Counsel also makes much of the fact that Watson testified that when Wilburn searched Daniels he found and took from him five tinfoil packages, whereas Wilburn testified that he took four tinfoil packages from Daniels. However, Watson further testified that Wilburn found five packages, which was the total amount confiscated, and that the package which he later gave to Wilburn, plus the packages found on Daniels, totaled five.

After Watson and Wilburn had testified, the State and the attorney for Daniels entered into a stipulation. At the time the stipulation was entered into, the State's Attorney stated that he was opening a manila envelope about 7 inches by 4¾ inches in dimension. He referred to this as People's Exhibit No. 1. The envelope was sealed and cellophane was taped across its back and the name "C. Vondrak," the police chemist, was written across the back. Out of this envelope was taken another manila envelope of the same size which was folded. This envelope had been sealed and then opened, and on the back of it, under cellophane tape, was written the name "Joseph Wilburn," the arresting officer.

The second envelope was marked and referred to as People's Exhibit No. 2. From the latter envelope was removed a small envelope 2 by 5 inches in size, with the initials "C.W." on its back. The third envelope was marked and referred to as People's Exhibit No.

3. From the third envelope five tinfoil packets were produced and collectively referred to as People's Group Exhibit No. 4. Officer Wilburn testified that Exhibit No. 2 was the envelope into which he had placed the five tinfoil packages for delivery to the Crime Laboratory. He stated that he had not seen the envelope marked as Exhibit No. 3 before it was presented in court. The offer of Exhibit No. 3 was later withdrawn. People's Exhibits Nos. 1 and 2 and People's Group Exhibit No. 4 were admitted in evidence.

To support the State's case the following oral stipulation was entered into:

> " . . . if chemist Charles Vondrak were called to testify on behalf of the State, he would testify he is a chemist employed by the police crime detection laboratory, that on March 26, 1962—strike that. On March 24, 1962 he received from Officer Wilburn of the 21st District five tinfoil packets containing an unknown quantity—a quantity of unknown white substance and that on March 26, 1962, he tested the contents of said packages and found they contained a substance known as heroin, diacetyl morphine hydrochloride, the total estimated weight is 0.55 grams. . . ."

▓▓▓ It is well recognized that a stipulation has the effect of eliminating proof which otherwise might be required. The law is well settled that an accused may, by stipulation, waive the necessity of proof of all or part of the case which the state has alleged against him. Having done so, he cannot complain of the evidence which he has stipulated into the record. People v. Pierce, 387 Ill 608, 57 NE2d 345; People v. Malin, 372 Ill 422, 24 NE2d 349.

▓▓ Officer Wilburn testified that he had placed five tinfoil packages taken from the defendant in a sealed envelope which he personally delivered to the

Crime Laboratory. That envelope was introduced in evidence as People's Exhibit No. 1. Taking the evidence as a whole, we are convinced that the connection of the heroin with the defendant was proved beyond a reasonable doubt. In so holding we have determined that the instant case is distinguishable from the second Judkins case, People v. Judkins, 28 Ill2d 417, 192 NE2d 848. In that case the chain of custody was found to have been broken when heroin powder labeled Exhibit Q-1 was not shown by any evidence to be connected with the other exhibits introduced at trial; namely, the various envelopes in which the heroin was kept during its custody by the police from the time of the alleged sale to its introduction into evidence.

In the case at bar the white powdery substance was stipulated to be heroin which came from the very packages delivered to the police laboratory for testing. This case falls within the holding in People v. Anthony, 28 Ill2d 65, 68, 69, 190 NE2d 837, and People v. McElroy, 30 Ill2d 286, 196 NE2d 651, where it was held that the custody and contents of the packets taken from the defendant were sufficiently established with no suggestion of tampering, alteration or substitution.

The testimony of the defendant was fantastic and unbelievable. The requirement that defendant's guilt be proved beyond a reasonable doubt does not mean that the court may disregard the inferences that flow from the evidence before it. People v. Russell, 17 Ill2d 328, 161 NE2d 309. Nor is the trier of the fact required to postulate a series of potential explanations of defendant's conduct and elevate them to the level of a reasonable doubt. People v. Owens, 23 Ill2d 534, 179 NE2d 630. We are convinced that the discrepancies in the testimony of the police officers pertain to relatively insignificant details which do

114

nothing to impeach their testimony viewed as a whole. It is true that Officer Watson was the only witness to the alleged sale. It has been often held that the testimony of one witness alone, if positive and credible, is sufficient to convict even though such testimony is contradicted by the accused. People v. Miller, 30 Ill2d 110, 195 NE2d 694; People v. McCain, 29 Ill2d 132, 193 NE2d 784; People v. Solomon, 24 Ill2d 586, 182 NE2d 736.

The judgment of the Criminal Court of Cook County is affirmed.

Judgment affirmed.

ENGLISH, P. J. and DRUCKER, J., concur.