People of the State of Illinois, Defendant in Error, v.
Thurman Davis, Jr., Plaintiff in Error.

Gen. No. 50,058.

First District, First Division.

February 15, 1965.

■

Harold L. Wagman, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney, of Chicago, Fred G. Leach and George W. Kenney, Assistant Attorneys General, Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE MURPHY delivered the opinion of the court.

Defendant, Thurman T. Davis, Jr., and Robert Lee Delaney were jointly charged, in a five count indictment, with unlawfully possessing, dispensing, and selling narcotic drugs, and for unlawfully conspiring to sell and dispense narcotic drugs to Isiah Simmons on August 5, 1958. In a bench trial and at the close of the State's case, the court entered a finding of not guilty as to Delaney, and the trial proceeded as to Davis. After hearing the testimony of Davis and of a number of witnesses testifying in his behalf, Davis was found guilty of the unlawful sale of narcotic drugs and was sentenced to the penitentiary for a term of 10 to 12 years.

■ The sole contention of defendant Davis is that the State did not prove by expert testimony, beyond a reasonable doubt, that the substance allegedly sold by the defendant was a narcotic drug, as charged in the indictment. Defendant cites People v. Williams, 25 Ill2d 562, 185 NE2d 686 (1962), and People v. Judkins, 28 Ill2d 417, 192 NE2d 848 (1963), which held that in a conviction for the sale of narcotics, the record must contain proof by an expert that the substance sold "was in fact narcotics as charged in the indictment," and in the absence of such expert identification, a judgment of conviction must be reversed.

On August 5, 1958, Isiah Simmons, a narcotics informer, arranged to purchase narcotics from defendant Davis at his apartment. Simmons met Davis about 9:00 a. m. near 47th and Woodlawn, and gave him $60 in marked money. Simmons was instructed to return for the narcotics at 11:00 a. m.

At about 11:00 a. m., Davis left an automobile and entered the Pierre Hotel at 4747 Woodlawn and went upstairs. He was carrying a brown bag at the time. Shortly thereafter, Simmons entered the building, went upstairs, and Davis gave him a white package on the second floor stairway. Davis proceeded to his room, and Simmons went downstairs and gave the package to Officer Stribling, one of a number of federal officers on the premises. Officers Stribling, Salone and Bryson, together with Simmons, then went to apartment 302 and forcibly entered it. As they gained entrance, Davis tossed an object out of the window. Officer Stribling "ran to the window, looked down and saw the package laying on the ground. I went down and retrieved it." It was a tinfoil package. Davis was placed under arrest and named Delaney as the one from whom he had obtained the narcotics.

Officer Stribling field tested the contents of both the white package and the tinfoil package, and the test indicated a derivative of opium. The packages were submitted by Officer Stribling to a U. S. chemist for further analysis, where they remained "in the custody of the U. S. Chemist until the first date of the trial in court. From that time on, they were still in the sealed condition they were received from the chemist and they have been kept in the vault at the Office of Division of Narcotic Control."

At the conclusion of the testimony of Simmons and the arresting officers, the Assistant State's Attorney trying the case stated, "Let the record show it is

stipulated by and between the parties that if Chemist John W. Fonner were here, who is with the Federal Department of Narcotics, he would testify that he examined the package given to him by Officer J. Stribling on August 7, 1958, and found it to contain 139.5 grains of heroin hydrochloride." The State then rested its case in chief. The court found Delaney not guilty, denied Davis' motion for a finding of not guilty as to himself, and recessed the trial as to Davis.

On the resumption of the trial on the following day, the Assistant State's Attorney stated to the court that he had talked with Mr. Brown, counsel for defendant, "about the stipulation yesterday. . . . I wanted to make the stipulation clear, in view of the fact that there were two packs of narcotics. The packet that we stipulated on, as to the testimony of the chemist, was a package that the State's evidence showed Simmons gave to Stribling, and that was a white envelope which is defferentiated from another packet which the State's evidence showed was thrown out the window." To this, Mr. Brown replied, "I'll stipulate that the chemist would testify that he examined a quantity of powder and that, in his opinion, it was heroin." A discussion then ensued between court and counsel as to what the stipulation covered. The court stated, "As an essential in this case, they have got to prove that the matter in the white envelope was heroin. Now does the stipulation of yesterday cover that package?" Mr. Brown replied, "My stipulation is that the chemist would testify that he examined a quantity of heroin, a quantity of powder, and that he found it to be heroin, period." The court: "And that that was in the white envelope?" Mr. Brown: "I would so stipulate." After further discussion, defendant proceeded with his defense.

Defendant testified that he was living with his wife in room 302 on August 5, 1958; that he had known

Simmons for some time, and on that date Simmons left a brown army bag with him, as he had done before. Simmons gave him no money. "They found no narcotics on the premises or on me, and I did not throw anything out the window. They stayed and searched the apartment for about 2 hours."

The arresting officers were recalled on behalf of Davis and substantially recounted their testimony given on behalf of the State. Simmons and Mrs. Davis were called by defendant. Their testimony adds nothing to the principal issue—what the stipulation covered. After the defense rested, the State, by stipulation, introduced into evidence a chemist's report, and the State then rested and waived opening argument.

Mr. Brown proceeded to argue for defendant and said, "We stipulated that the chemist received a package of powder wrapped in a white envelope which he analyzed and found to be heroin. There is some question in my mind, Judge, as to whether or not sufficient proof was introduced by the State to tie up the package which the chemist received with the package which Simmons allegedly handed to Stribling." After some colloquy, the court said, "Now, you're either stipulating that this matter that was turned over was the stuff that Stribling claims he got from Simmons or you're not stipulating and let's have an understanding," and Brown replied, "Well, Judge, it appears to bear Stribling's signature. Therefore, I will stipulate that that is what he turned over." Continuing, the court, addressing itself to defendant's counsel, said: "But you have got something that is a matter of routine proof, that they can offer with the inspector, that he turned it over to this man, that they got it back, and the report seems to indicate that. Now, then, when you stipulate that the chemist will testify that what he got was that, necessarily and I

think implicit in the stipulation is the admission that which is the thing that's the subject matter of inquiry in this suit, namely, what the witness had testified that he got from Simmons, the alleged purchaser. But I don't want any misunderstanding, or any quibbling about the identification of what was examined. But I think you have covered it now. All right, anything further?" Mr. Brown then proceeded with his argument, which covered what the arresting officers saw and the whereabouts of Simmons from 9 to 11 o'clock.

After hearing an extended argument on behalf of defendant, the trial judge reviewed the facts and stated, "There is corroborating evidence here of facts and circumstances corroborating Simmons," and found Davis "guilty of unlawful sale."

Defendant argues that "nowhere in the record can one find any evidence or an offer of evidence that the package referred to in the stipulation on the chemist's testimony was exactly the same package which Officer Stribling or Salone received from Simmons. . . . Thus, the State has utterly and completely failed to complete the necessary 'chain of evidence' establishing a continuity of possession of a specific narcotic drug from the defendant, to the informer, to the police officer, to the expert witness, to the trial court," as required in People v. Judkins, 28 Ill2d 417, 192 NE2d 848 (1963).

██ We agree with defendant that the presentation of the State's case was "less thorough and more inept than in the Judkins case." We note, also, that recently our Supreme Court, in People v. Maurice, 31 Ill2d 456, 202 NE2d 480 (1964), said:

"[C]ontinuity of possession or positive identification is therefore necessary to qualify such material or the results of analyses for admission into evidence. The duty of the State to prove

defendant's guilt beyond a reasonable doubt cannot be assisted by judicial assumption that a stipulation mistakenly states the facts through inadvertence of the representative of the People. Admission of the heroin in evidence without positive identification or continuity of possession was error."

■ While we conclude from an examination of this record that the State's case, on a very vital issue, was ineptly presented, we believe the continued insistence by the trial judge during the trial that any doubt be removed as to what the oral stipulation covered, resulted in an unequivocal stipulation on behalf of defendant that the powder examined by the chemist, and found to be heroin, was the contents of the white package given by the informer to Officer Stribling, and that the subject of the stipulation was not the contents of the tinfoil package thrown out of the window. As was said in People v. Polk, 19 Ill2d 310, 315, 167 NE2d 185 (1960):

> "The law is well established that an accused may, by stipulation, waive the necessity of proof of all or part of the case which the People have alleged against him. Having done so, he cannot complain of the evidence which he has stipulated into the record."

In addition to this stipulation, the record further contains the testimony of one of the arresting officers, that "I see Davis meet Simmons on the second floor stairwell and saw him hand him a package." Simmons testified that this was the white package he thereafter gave to Inspector Stribling, who testified that he field tested it and turned it over to the U. S. chemist.

■■ We believe the record in this case shows the required continuity of possession and positive identi-

fication of a narcotic drug. The testimony of Simmons comes within the rule that the credibility of the witnesses in a case tried without a jury is a matter for the trial judge to determine, and his judgment, based thereon, will not, unless clearly in error, be set aside. People v. Anthony, 28 Ill2d 65, 69, 190 NE2d 837 (1963).

For the reasons given, we conclude that defendant was proven guilty beyond a reasonable doubt of the sale of narcotic drugs, as charged. Therefore, the judgment of the Criminal Division of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN, P. J. and KLUCZYNSKI, J., concur.