THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MIGUEL VAZQUEZ, Defendant-Appellant.

First District (4th Division)   No. 1—86—2383

Opinion filed February 23, 1989.

Marvin Bloom, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Kim A. Novi, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Miguel Vazquez, defendant, was charged by information with the unlawful delivery of a controlled substance, in violation of section 401 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(a)(2)). Defendant was found guilty after a jury trial in the circuit court of Cook County and sentenced to 10 years in the Illinois Department of Corrections. On appeal, defendant raises the following three issues for our review: (1) whether he was proved guilty beyond a reasonable doubt of delivering more than 30 grams of a con-

trolled substance; (2) whether the court properly admitted evidence of a purported earlier unlawful delivery of a controlled substance by him; and (3) whether the opening and closing statements by the prosecution deprived him of a fair trial.

We affirm.

Defendant was convicted of the unlawful delivery of 45.76 grams of cocaine to undercover Detective Patrick Flynn. On July 2, 1985, Detective Flynn purchased cocaine from a party identifying himself as "Mike." Detective Flynn identified defendant as "Mike." At trial, Detective Flynn testified that he had purchased cocaine from defendant on a previous occasion.

Flynn testified that on June 12, 1985, he placed a telephone call to a woman named "Norma," with the intention of purchasing cocaine. He gave Norma his beeper number as a means of contacting him. Approximately one hour later, when Flynn answered his page, he spoke with a man who identified himself as "Mike." Flynn told Mike that he wanted to buy one or two ounces of cocaine. Mike then arranged to meet Flynn at the gas station located at California and Diversey Avenues in Chicago.

Flynn arrived at the gas station with his partner, undercover Chicago police officer Kathleen Brannigan. A surveillance team consisting of Sergeant Emmett Boyd and Officers Calvin Holiday and Richard Peck were assigned to work with Flynn.

Mike met with Flynn and Brannigan and instructed them to drive to an alley behind 2740 North California Avenue. Flynn met Mike at the alley and was then told to follow him to the basement of 2738 North California. Mike gave Flynn a clear plastic bag containing white powder. Flynn, in exchange, gave Mike $1,700 of previously recorded Chicago police department money. Flynn, Brannigan, and surveillance team member Holiday each identified the defendant as Mike.

The substance was tested by Flynn and found to be cocaine. William Tyrell, a Chicago police department chemist, also tested the substance and identified it as cocaine.

A case report was written by Flynn that described Mike as being approximately 37 years of age, weighing 155 pounds, and having brown eyes, an olive complexion, and facial hair. This description was based on Flynn's personal observation of Mike during the five-minute drug transaction. Brannigan and Holiday adopted this description based on their personal observations of Mike.

On July 2, 1985, Flynn and Mike again made contact by telephone. Brannigan was present when the call was made. Flynn spoke to the party who identified himself as Mike. He recognized the voice

as being that of the same person with whom he spoke on June 12, 1985.

Flynn testified that, during this conversation, it was agreed that Mike would sell him two ounces of cocaine for $3,600. Flynn was to go to 2738 North California, the same location as the June 12 transaction, and call the same number. Mike would then meet him within minutes. Another surveillance team was organized by Flynn, which consisted of Officers Brannigan, Darcy, Holiday, and Abbott, and Sergeant Boyd.

Flynn testified that he met Mike on the street in the vicinity of 2800 North California. Mike informed Flynn that he could only get 1½ grams of cocaine. Flynn agreed to pay $2,400 for this amount. Mike gave the two bags of cocaine to Flynn at another location, 2738-40 North California. Flynn then informed Mike that he would have to come to his car, located at the restaurant parking lot near the corner of Diversey and California, for payment.

Brannigan and the surveillance team awaited Flynn's and Mike's arrival at the parking lot. Prior to the time that Flynn actually turned the money over, the surveillance team approached and placed defendant under arrest for both the July 2 and the June 12 deliveries. After the arrest, Brannigan noticed that Flynn, upon his return to the car, carried two clear plastic bags of what appeared to be cocaine.

Flynn prepared another case report describing defendant as 34 years of age, weighing 170 pounds, and having hazel eyes. An identification card and $10 were recovered from defendant at the time of his arrest.

Flynn field tested the substance in the two bags, using the marquis test, and found the substance to contain cocaine. At trial, Flynn testified that the seal on the bags had not been broken except for analysis by one of the police department's chemists.

At trial, defendant testified that on July 2 he was working in his garage in the 2700 block of North California. He went for lunch, about six blocks south of his garage. After lunch he walked to the restaurant near the corner of Diversey and California to pick up coffee, which he would take back to the garage. At that point, defendant was stopped by police and asked his name. He told them his name was Miguel Vazquez. After one of the officers said, "You look like the guy," defendant was arrested.

Defendant testified that he had never come in contact with Flynn prior to his arrest. Defendant was later indicted for both the June 12 and the July 2 deliveries. The State elected to try defendant on the July 2 delivery.

At trial, defendant's motion *in limine* to strike the evidence of the June 12 delivery was denied. Defendant was found guilty of delivering a controlled substance and sentenced to 10 years in the penitentiary.

■ A reviewing court should not disturb a conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Mills* (1968), 40 Ill. 2d 4, 19.) We do not find that the evidence admitted by the trial court rises to the level of such improbability that would warrant a reversal of the trial court.

Defendant first contends that there was insufficient evidence to convict him of delivering a controlled substance. The Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(a)(2)) (hereinafter the Act), provides, in pertinent part:

"Except as authorized by this Act, it is unlawful for any person knowingly to \*\*\* deliver, or possess with intent to \*\*\* deliver, a controlled \*\*\* substance. Any person who violates this Section with respect to:

(a) the following controlled \*\*\* substances and amounts \*\*\* is guilty of a Class X felony.

(2) 30 grams or more of any substance containing cocaine."

■ To sustain a conviction, the State must establish beyond a reasonable doubt that defendant knowingly delivered a substance and knowingly represented the substance to be a controlled substance. *People v. Zambetta* (1985), 132 Ill. App. 3d 740, 749.

Defendant argues that the evidence was insufficient to convict him. Defendant contends that there was no unrefuted evidence presented identifying him as Mike. The variance in the June 12 description of "Mike" given by Flynn, and defendant's actual physical characteristics, defendant claims, is disparate.

■ Flynn, in his initial case report of June 12, described "Mike" as being 37 years old, weighing 155 pounds, and having brown eyes. Defendant is 34 years old, weighs over 170 pounds, and has hazel eyes. These discrepancies, however, are minor and would not destroy the credibility of the identification. Where the evidence is sufficient, a conviction for unlawful delivery of a controlled substance will be sustained despite alleged discrepancies in identification provided by an undercover police officer. *People v. Agosto* (1979), 70 Ill. App. 3d 851, 854-56.

■ It is well settled that, where identification of the defendant is at issue, the testimony of one witness is sufficient to convict, even though the testimony is contradicted by the defendant, provided the witness is credible and viewed the defendant under circumstances

that would permit a positive identification. *People v. Mendoza* (1978), 62 Ill. App. 3d 609, 615.

■ In the instant case, both Flynn and Brannigan viewed the defendant under circumstances that permitted positive identification. Flynn made contact with Mike on two separate occasions. In his June 12 case report, Flynn described Mike based on personal observation.

Although the case report description is slightly inaccurate, Flynn still recognized defendant on July 2 as the same man from whom he had purchased cocaine only 19 days earlier. Officer Holiday, a member of the surveillance team on both June 12 and July 2, and Officer Brannigan also identified defendant as the man with Flynn on June 12. In light of the fact that the discrepancies were minor and that defendant was viewed by credible witnesses under circumstances that permitted a positive identification, we find the evidence sufficient with respect to physical identification of defendant to sustain a conviction.

■ Defendant further argues that the evidence was insufficient to convict him based on Flynn's description of the July 2 delivery. Defendant finds incredulous an alleged delivery of $2,400 of cocaine without immediate payment in return.

According to Flynn's testimony, however, Mike was informed that the money for the cocaine was in Flynn's car. We do not find it implausible that a party selling drugs would believe that his buyer would not carry such sums of money on his person. Defendant's argument on this issue is simply not persuasive.

Defendant next contends that he did not receive a fair trial because the trial court improperly admitted evidence as to the June 12 delivery. Defendant was originally charged on two separate counts. The State elected to try defendant on the July 2 delivery.

Defendant argues that the State's presentation of evidence of the June 12 delivery forced him to have to defend against another crime almost identical to the one on trial. Defendant claims that the State's offering of the June 12 delivery was designed to show defendant's propensity to sell drugs.

■ The general rule is that evidence of other crimes is inadmissible to establish the defendant's propensity to commit the crime currently at trial. (*People v. McKibbins* (1983), 96 Ill. 2d 176, 182.) This rule, however, is subject to innumerable exceptions. For example, evidence of other crimes may be introduced if it is relevant to prove *modus operandi*, intent, identity, motive or absence of mistake. *McKibbins*, 96 Ill. 2d at 182.

■ Evidence of other crimes may not be received until it is

shown that the crime actually took place and that the defendant committed or participated in its commission. (*People v. Scott* (1973), 13 Ill. App. 3d 620, 626.) It is not incumbent that the State prove the commission of the other crime beyond a reasonable doubt. (*People v. Smith* (1972), 3 Ill. App. 3d 958, 961.) The court must, however, balance the probative value of the evidence of other crimes against the prejudicial effect it may have upon the trier of fact. See *People v. Baxter* (1966), 74 Ill. App. 2d 437.

The State contends that evidence of the June 12 delivery was presented for relevant purposes other than to show defendant's propensity to commit the crime. Sufficient evidence was presented, the State argues, to prove that on June 12 defendant knowingly delivered a quantity of white substance to Flynn which defendant represented as cocaine in violation of the Act.

The State first presented evidence, offered by Flynn, confirming that the white substance delivered to him on June 12 was cocaine. Flynn conducted a field test on the substance at the police station hours after it was delivered to him which proved that it was cocaine. Defendant disputes the validity of the test by citing to *People v. Judkins* (1963), 28 Ill. 2d 417, to support his proposition. *Judkins*, however, is factually distinguishable from the case at bar.

In *Judkins*, a field test was conducted by a police officer on one of four packets of heroin confiscated from the defendant. The court held that there was insufficient proof that the substance in all four packets was heroin when only one packet was tested. (*Judkins*, 28 Ill. 2d at 421.) Further, *Judkins* did not concern the introduction of evidence of prior crimes. The issue in *Judkins* was whether the State proved beyond a reasonable doubt that the substance in all four packets was heroin based on a test of one packet. Defendant's reliance on *Judkins*, therefore, is misplaced.

■ Defendant's contention that a field test is insufficient to establish that a substance is a narcotic is simply incorrect. A field test of a substance has been held sufficient to prove that the substance is a narcotic. (*People v. Clark* (1955), 7 Ill. 2d 163, 171; *People v. Gaston* (1975), 31 Ill. App. 3d 352, 354.) In light of this determination, defendant's further contention that the chain of custody was not properly established is immaterial. *Gaston*, 31 Ill. App. 3d at 354.

The State asserts that evidence of the June 12 delivery was properly admitted as it proved identity, knowledge, absence of entrapment and a more complete picture of the July 2 delivery.

■ Evidence of other crimes may be admitted where relevant for any other purpose than to show defendant's propensity to commit

the crime. *People v. Cole* (1963), 29 Ill. 2d 501, 503-05.

In *People v. Cole*, two Federal narcotics agents testified that one of them had purchased drugs from the defendant on two previous occasions while the other observed. Defendant denied selling narcotics to the agent on the prior occasions. Defendant argued that evidence of these prior transactions should not have been admitted since he was being charged and tried for the sale of narcotics on a different, later date.

The Illinois Supreme Court in *Cole* held that "[e]vidence of other offenses is admissible, if relevant for any purpose other than to show a mere propensity on the part of the defendant to commit the crime. [Citation.] Thus, we have allowed evidence of narcotics transactions by a defendant other than the one for which he is being tried where such evidence was relevant to prove his identity [citations], his guilty knowledge [citations], or to show his design or system. [Citation.] The Federal courts have used the same test in allowing evidence of other narcotics transactions by defendant." *Cole*, 29 Ill. 2d at 503.

In so holding, the court found that evidence of prior transactions strengthened the identification of the defendant as the person with whom the agent had previously dealt; showed the relationship between the defendant and the agent; and explained and lent credence to the otherwise unrealistic ease with which the narcotics were purchased by the agent. *Cole*, 29 Ill. 2d at 504-05.

■■ Similarly, defendant's identity is at issue in the case at bar. Although testimony was given by Flynn and Officers Holiday and Brannigan identifying the defendant as Mike, defendant denies that he was the party involved in those drug transactions. Evidence of the June 12 delivery refutes defendant's claim and lends credibility to the State's identification of defendant. It also shows how the relationship between the parties was established.

We, therefore, find that evidence of the June 12 delivery was relevant for purposes of identification and giving a more complete picture of the crime charged. See also *People v. Borawski* (1978), 61 Ill. App. 3d 774, 779.

■■ Evidence of other crimes may be brought in to rebut the defense of entrapment. (*People v. Tipton* (1980), 78 Ill. 2d 477, 486.) A review of the record reveals that defendant indicated that the defense may be raised. In such an event, introduction of the previous delivery would be relevant.

■■ The propriety of admitting evidence of other crimes turns on whether, in light of the applicable exception, the trial court abused its discretion in allowing such testimony, even though the testimony is

found relevant. (*People v. Wojtasik* (1982), 104 Ill. App. 3d 263, 265.) The probative value of its admission must be balanced against its prejudicial effects. *People v. Morgan* (1983), 113 Ill. App. 3d 543, 548.

On balance, we find that evidence of the June 12 delivery was properly admitted in view of its valid and limited purposes. The probative value is not outweighed by prejudicial effect. The trial court did not abuse its discretion in allowing evidence of the prior delivery.

Finally, defendant contends that the State's opening and closing arguments were so highly prejudicial that defendant was denied his due process right to a fair and impartial trial. We disagree.

Defendant first asserts that the prosecutor improperly argued facts not in evidence. In the State's opening and closing statements made to the jury, the prosecutor referred to the previous delivery made by defendant.

A reviewing court which finds that the challenged evidence was properly admitted will not find reversible error in opening and closing statements that refer to and summarize the admitted evidence. *People v. McKibbins* (1983), 96 Ill. 2d 176, 187.

In the case at bar, we find that reference to the June 12 delivery was properly admitted. Therefore, the State's reference to this delivery would not constitute reversible error.

Defendant next asserts that the State, during its argument to the jury, improperly appealed to the prejudices and fears of the jury. Specifically, defendant refers to the remarks made by the prosecutor in pointing out the deadly effects of cocaine. The prosecutor brought up the recent deaths of two well-known sports figures who recently died from narcotics abuse.

Defendant contends that use of these recent deaths would inflame the jurors' emotions and allow them to associate the defendant with those dealers who actually sold drugs to these athletes. The remarks, defendant argues, did nothing toward the clarification of the issues, but, rather, were designed to prejudice defendant.

Even assuming, *arguendo*, that this did have such an effect upon the jurors, it would not be sufficient to reverse the trial court's judgment. The error must be a material factor in the defendant's conviction. *People v. Brown* (1986), 146 Ill. App. 3d 101, 106.

We find that the State's remarks were not designed to prejudice defendant nor were such remarks a material factor in his conviction. The record does not indicate that the remarks influenced the jury's verdict. Comments made to the jury concerning the evils of drug abuse and the need to punish drug pushers have been held permissible. (*People v. Hunter* (1984), 124 Ill. App. 3d 516, 534-35.) Argu-

ments which concern the seriousness of the crime and the benefits of a fearless administration of law are proper. *People v. Jackson* (1981), 84 Ill. 2d 350, 360.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.