**IN THE COURT OF APPEALS OF IOWA**

No. 17-1236
Filed August 1, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**NORA PETTYJOHN,**
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Marion County, James D. Birkenholz (motion), District Associate Judge, Terry L. Wilson (bench trial), Judge, and Steven W. Guiter (sentencing), District Associate Judge.

    Nora Pettyjohn appeals her convictions for operating while intoxicated and possession of methamphetamine, second offense. **CONVICTIONS AFFIRMED. SENTENCES VACATED. REMANDED FOR RESENTENCING.**

    Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

    Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

    Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**VOGEL, Judge.**

Nora Pettyjohn appeals her convictions for operating while intoxicated and possession of methamphetamine, second offense. She argues the court erred in denying her motion to suppress, imposing an illegal sentence, and imposing consecutive sentences without stating the reasons for doing so. She also argues generally the evidence is insufficient to support her convictions and her counsel was ineffective for failing to file a motion to amend or enlarge the court's findings. We find the court correctly denied her motion to suppress and her sentence was not illegal but rather a procedural sentencing issue not preserved on appeal. We further find sufficient evidence supports her convictions, and her counsel was not ineffective for failing to request the trial court to amend or enlarge its findings. However, the court erred in failing to state its reasoning for consecutive sentences. Therefore, we affirm her convictions, vacate her sentences, and remand for resentencing.

## I.      Background Facts and Proceedings

On January 31, 2017, Knoxville Police Officer Kyle Eastwood saw Pettyjohn driving a car with a non-working brake light. He continued to observe her for a short time and did not notice any other violations. When she pulled into a convenience store parking lot, he initiated a traffic stop due to the faulty brake light. She exited her vehicle and waved her arms before he exited his patrol vehicle. He noticed she seemed "fidgety" and spoke rapidly. He observed her talking to herself, "frantically" looking for something, and showing a short attention span. At this point he suspected she was under the influence of something, likely an upper such as methamphetamine. He conducted field sobriety tests and noticed several

clues: six out of six clues on the horizontal gaze nystagmus (HGN); three out of eight clues on the walk and turn; and one out of four clues on the leg stand. He then conducted a preliminary breath test, which showed a blood alcohol level of .001.

During the stop, Pettyjohn claimed she was hot, even though the outdoor temperature was thirty-six degrees. She removed the Harley-Davidson jacket she was wearing and revealed a Harley-Davidson t-shirt. She refused to put the jacket back on even though she repeatedly complained of being cold. She referred to it as "my" jacket several times during the stop.

Officer Eastwood arrested Pettyjohn for operating while under the influence. Another officer searched the jacket she had worn and found part of an ink pen with a small bag containing a crystal substance. The substance weighed two-tenths of one gram and field tested positive for methamphetamine. Pettyjohn described the pen as a "snort tube." She then denied owning the jacket or the items inside it, but she did not know the name of the person who owned the jacket. Officers searched her vehicle and found three hypodermic needles behind the driver's seat.

Officer Eastwood transported Pettyjohn—and the jacket at her request—to jail and gave her an opportunity to provide a urine sample. She initially produced an insufficient amount of dark yellow urine. She then provided a jar of a liquid that appeared to be toilet water; the liquid was light yellow in color, the sample jar was cold to touch, and the detention officer who supervised the sample heard the jar hit the stool. Officer Eastwood then noted she had refused to provide a sample.

On April 18, Pettyjohn filed a motion to suppress evidence from the search asserting the search exceeded the scope of the stop. During a hearing on the

motion, Officer Eastwood testified he joined the Knoxville Police Department in October 2012 and he does not have training as a drug recognition expert, but as a police officer he encounters someone under the influence of methamphetamine at least once per week. The court found reasonable suspicion for the search and denied the motion. After a stipulated trial on the minutes, the court found her guilty of operating while under the influence and possession of methamphetamine, second offense. The court sentenced her to a term of incarceration of two years for possession and one year for operating while under the influence, run consecutively, with all but two days suspended; two years of probation; and fines and surcharges. Pettyjohn now appeals her convictions and sentence.

## II.    Standard of Review

We review constitutional issues de novo. *State v. Lowe*, 812 N.W.2d 554, 566 (Iowa 2012). We review insufficient-evidence claims for errors at law, and we will affirm the verdict if supported by substantial evidence. *State v. Wickes*, 910 N.W.2d 554, 564 (Iowa 2018). "Evidence is substantial if, 'when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *State v. Ramirez*, 895 N.W.2d 884 890 (Iowa 2017). "We review claims of ineffective assistance of counsel de novo." *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). We review non-constitutional claims of an illegal sentence for correction of errors at law. *State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018). We review other sentencing issues for abuse of discretion. *State v. Hill*, 878 N.W.2d 269, 272 (Iowa 2016).

### III. Motion to Suppress

Pettyjohn argues the district court erred in denying her motion to suppress evidence from the traffic stop under the United States and Iowa constitutions.[1] She concedes the initial stop was lawful due to the non-working brake light, but she argues the search impermissibly exceeded the initial scope of the stop.

"[T]he scope of an investigatory stop 'must be carefully tailored to its underlying justification' and 'last no longer than is necessary to effectuate the purpose of the stop.'" *State v. Coleman*, 890 N.W.2d 284, 288 (Iowa 2017) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). The officer may not prolong the stop "unless the government had reasonable suspicion of criminal activity apart from the traffic violation." *In re Pardee*, 872 N.W.2d 384, 392 (Iowa 2015) (citing *Rodriguez v. United States*, 135 S. Ct. 1609, 1616–17 (2015)). Whether reasonable suspicion exists depends on "the totality of the circumstances confronting the officer." *State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004).

Officer Eastwood's testimony shows Pettyjohn's suspicious behavior began almost as soon as the stop began. Before he even exited his patrol vehicle, she exited her vehicle waving her arms. She spoke at a rapid pace. She talked to herself. She was "fidgety" and frantically searched for an unknown object. She had a short attention span. Relying on his experience as a police officer—including

---

[1] The State argues Pettyjohn did not preserve error on her Iowa constitution claim because her motion to suppress was based on federal law and merely cited to the state constitution. *See State v. Lowe*, 812 N.W.2d 554, 566 (Iowa 2012) ("[W]e generally decline to consider an independent state constitutional standard based upon a mere citation to the applicable state constitutional provision."). To the extent she argues the search violated both the federal and state constitutions, error is preserved. However, she does not assert any independent state constitutional standard on appeal, and we do not consider any such argument.

regular encounters with persons under the influence of methamphetamine—he testified these behaviors are consistent with someone under the influence of an illicit substance. Therefore, the officer developed reasonable suspicion of further wrongdoing during the time required for the traffic stop, and the officer acted lawfully on this suspicion.

Pettyjohn asserts all of her actions had innocent explanations and were at most unusual. She also notes Eastwood observed no violations prior to the stop other than the non-working brake light. However, viewing the totality of the circumstances, the officer did not unlawfully prolong the traffic stop during the encounter. Therefore, the district court did not err in denying the motion to suppress.

### IV.   Sufficiency of the Evidence

Pettyjohn argues the evidence was insufficient to convict her of both operating while intoxicated and possession of methamphetamine, second offense.

#### A.  Operating while Intoxicated

A person commits operating while intoxicated if the person operates a motor vehicle while under the influence of alcohol, drugs, or a combination thereof. Iowa Code § 321J.2(1)(a) (2017). Pettyjohn acknowledges she was operating a motor vehicle, but she argues the evidence is insufficient to prove she was under the influence of drugs or alcohol at the time.

From the beginning of the stop, Pettyjohn displayed unusual and frantic behavior consistent with someone under the influence of methamphetamine. A search of the jacket she wore uncovered a crystalline substance—which field testing indicated was methamphetamine—and a tube—which she described as a

"snort tube." While she denied owning the jacket or its contents, she could not say who owned it, it matched her t-shirt, she repeatedly called it "my" jacket, and she wanted it kept with her after she was arrested. At the jail, she surreptitiously filled a sample jar with toilet water to avoid providing a urine sample. She also presented several clues during field sobriety testing, including six of six clues on the HGN, suggesting some type of impairment. This evidence is sufficient to convince a rational jury beyond a reasonable doubt she was under the influence of methamphetamine. *See Wickes*, 910 N.W.2d at 564.

Pettyjohn correctly notes Officer Eastwood did not observe her driving erratically; he did not detect bloodshot or watery eyes, slurred speech, or the odor of alcohol; and her breath test only showed a blood alcohol level of .001. However, this evidence regarding the absence of alcohol intoxication does not contradict the evidence that she was under the influence of methamphetamine. Therefore, sufficient evidence supports her conviction for operating while intoxicated.

### B. Possession of Methamphetamine, Second Offense

Under Iowa law, "It is unlawful for any person knowingly or intentionally to possess" methamphetamine. Iowa Code § 124.401(5). Pettyjohn specifically argues the evidence is insufficient to establish the substance found on her was methamphetamine.

Officers found a crystalline substance on Pettyjohn, which field testing indicated was methamphetamine. Much of the evidence supporting her conviction for operating while intoxicated also supports her conviction for possession of methamphetamine, including her unusual behavior, the clues she presented during field sobriety testing, the "snort tube" found in the jacket, and her actions in

filling the urine sample jar with toilet water. In addition, officers found hypodermic needles in her car.

Pettyjohn challenges the reliability of the field testing. She notes the State never provided evidence of laboratory testing on the substance. She provides citations to cases from several other jurisdictions that found field testing alone was not sufficient evidence of a controlled substance. *See*, *e.g.*, *People v. Hagberg*, 733 N.E.2d 1271, 1273 (Ill. 2000) (noting evidence is insufficient when "the officer testified that the field test could show only that the substance 'might be' narcotics" (citing *People v. Judkins*, 192 N.E.2d 848 (Ill. 1963))); *but see id.* ("[T]his court has never held that a field test is insufficient to identify the substance as a narcotic simply because the test was a field test."). She also provides several articles that question the reliability of field tests. *See*, *e.g.*, Ryan Garbielson & Topher Sanders, *How a $2 Roadside Drug Test Sends Innocent People to Jail*, N.Y. Times Mag. (July 7, 2016), https://www.nytimes.com/2016/07/10/magazine/how-a-2-roadside-drug-test-sends-innocent-people-to-jail.html? ("There are no established error rates for the field tests, in part because their accuracy varies so widely depending on who is using them and how."). However, test results are not required to support a conviction for a drug offense, and "[t]he finder of fact is free to use circumstantial evidence to find that the substance is an illegal drug." *State v. Brubaker*, 805 N.W.2d 164, 172 (Iowa 2011). Moreover, Pettyjohn stipulated to a trial on the minutes, agreeing in a hearing that her verdict would "be just based upon what has been filed in the minutes of evidence and the police report." By doing so, she relieved the State of laying foundation for the admissibility of the field testing results. *See State v. Sayre*, 566 N.W.2d 193, 196 (Iowa 1997) (requiring the court

to "confirm the extent of the factual record to which the parties are stipulating"). As explained above, the State relies on Pettyjohn's observed behaviors in addition to the field test to prove the crystalline substance was a controlled substance. Taken in the light most favorable to the State, this evidence allows a reasonable factfinder to conclude beyond a reasonable doubt Pettyjohn possessed methamphetamine. *See Wickes*, 910 N.W.2d at 564. Therefore, sufficient evidence supports her conviction for possession of methamphetamine as charged.

## V. Enlargement of the Court's Findings and Conclusions

Pettyjohn argues her counsel was ineffective for failing to file a motion for the district court to enlarge its findings and conclusions. Following a trial on the minutes, the court issued an order stating it "considered the Minutes of Testimony and the Defendant was found guilty of" both counts. Without pointing to any specific weakness in the district court's factual findings, Pettyjohn simply argues that, without more detail from the district court, she cannot know which facts the court relied upon in convicting her of both counts.

To prevail on a claim of ineffective assistance of counsel, the defendant must show "(1) counsel failed to perform an essential duty; and (2) prejudice resulted." *Clay*, 824 N.W.2d at 495 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The defendant must satisfy both elements to prevail. *Id.*

A defendant is not required to seek an enlargement of the facts and findings following a bench trial in order to challenge the sufficiency of the evidence supporting a conviction on appeal; accordingly, our supreme court has questioned whether counsel can ever breach an essential duty by failing to seek such an enlargement. *See State v. Miles*, 346 N.W.2d 517, 519 (Iowa 1984). Furthermore,

Pettyjohn cannot show prejudice. While the district court's order lacks detail, it clearly identifies the minutes of evidence as the basis for the convictions. As explained above, sufficient evidence supports her convictions on both counts. Therefore, Pettyjohn's counsel was not ineffective for failing to seek an enlargement of the facts and findings.

## VI.    Enhanced Penalty for Prior Controlled Substance Conviction

Pettyjohn argues the district court erred in imposing an enhanced penalty for having a prior controlled-substance conviction. *See* Iowa Code § 124.401(5) (stating a first violation is a serious misdemeanor and a second violation is an aggravated misdemeanor). She casts her argument as a challenge to an illegal sentence, which she may assert on appeal even without first raising an objection before the district court. *State v. Bruegger*, 773 N.W.2d 862, 869 (Iowa 2009). The State casts her argument as a challenge to her sentencing procedure, which must be preserved for appeal by filing a motion in arrest of judgment. *State v. Harrington*, 893 N.W.2d 36, 43 (Iowa 2017). Since she did not file such a motion, the State argues she has failed to preserve error.

"[A] challenge to an illegal sentence includes claims that the court lacked the power to impose the sentence or that the sentence itself is somehow inherently legally flawed, including claims that the sentence is outside the statutory bounds or that the sentence itself is unconstitutional." *Bruegger*, 773 N.W.2d at 871. Iowa Code section 124.401(5) explicitly designates a second controlled-substance violation as an aggravated misdemeanor. Pettyjohn raises no statutory or constitutional objection to this designation. Nor does she raise an additional challenge to the sufficiency of the evidence supporting her conviction for

possession of methamphetamine, second offense. Instead she argues the district court at the sentencing hearing chose an illegal sentence by imposing the "second offense"—an aggravated misdemeanor—punishment rather than imposing a "first offense"—a serious misdemeanor—punishment. The sentence is not illegal if the punishment is statutorily provided for the conviction. *See Tindell v. State*, 629 N.W.2d 357, 359 (Iowa 2001) (stating an illegal sentence is "one not authorized by statute").

Moreover, this is not a situation where the record contains no indication the defendant has qualifying prior convictions. *See*, *e.g.*, *State v. Woody*, 613 N.W.2d 215, 218 (Iowa 2000) (finding the defendant's prior convictions in the record do not support habitual offender enhancement on the instant offense). According to the minutes here, she told Officer Eastwood her previous probation had ended about a week before the stop. Officer Eastwood's report notes the stop resulted in charges of a second controlled substance offense and her prior conviction was in 2014. The trial information charged her with possession of methamphetamine, second offense. After being convicted of the possession charge as a second offense, Pettyjohn's attorney acknowledged it was "an aggravated misdemeanor." The presentence investigation report refers to a 2014 conviction for possession of a controlled substance. Taking the record as a whole, we cannot say it is so devoid of references to a qualifying prior conviction that the court erred in imposing an illegal sentence by imposing the enhanced penalty.

## VII.     Consecutive Sentences

Pettyjohn's final issue is the district court erred in imposing consecutive sentences. She asserts the district court did not provide reasoning for imposing

consecutive sentences as required. *See State v. Jacobs*, 607 N.W.2d 679, 690 (Iowa 2000). The State concedes the error, and we agree after our review. Therefore, we vacate the sentences and remand for resentencing.

## VII. Conclusion

The court correctly denied Pettyjohn's motion to suppress and found she has a prior conviction for possession of methamphetamine. Additionally, sufficient evidence supports her convictions and her counsel was not ineffective for failing to request the trial court amend or enlarge its findings. However, the court erred in failing to state its reasoning for consecutive sentences. Therefore, we affirm her convictions, vacate her sentences, and remand for resentencing.

**CONVICTIONS AFFIRMED. SENTENCES VACATED. REMANDED FOR RESENTENCING.**