THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARL A. "BUTCH" LOWRY, Defendant-Appellant.

Fourth District   No. 4—91—0760

Opinion filed June 29, 1992.

Daniel D. Yuhas and M. Jeffrey Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Scott H. Walden, State's Attorney, of Quincy (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Defendant Carl A. "Butch" Lowry appeals his conviction for the offense of unlawful delivery of a controlled substance (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(d)), following a jury trial in the circuit court of Adams County. Defendant was sentenced to a term of eight years' imprisonment, to be served concurrently with a three-year term imposed on a conviction for unlawful delivery of cannabis. (Ill. Rev. Stat. 1989, ch. 56½, par. 705(c).) These sentences were ordered to run consecutively with a sentence already being served on a conviction for violation of bail bond.

At issue is testimony regarding a prior criminal act by defendant which was admitted for the purpose of showing defendant's knowledge, intent, and identity. Defendant claims the prejudicial effect of the testimony greatly outweighed its probative value and thereby deprived him of a fair trial. Defendant also claims (1) there was insufficient proof of chain of custody in the admission of the cocaine into evidence; (2) the State's material misrepresentation of the law during closing argument entitles him to a new trial; (3) his sentences should be modified so as to run concurrent to the sentence for bail bond violation and, if so modified, credit for 151 days served on the bail bond violation should be applied to the convictions for unlawful delivery; and (4) the street-value fine should be reduced to reflect the actual value of the substance delivered, rather than the amount paid for it. In the alternative, the court should order that the street-value fine is satisfied by operation of section 110—14 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 110—14),

which provides for a credit of $5 for each day of incarceration on a bailable offense.

## FACTS

Undercover officers Randy Jackson and Robert Power first met defendant on October 2, 1990, while trying to purchase cannabis from Carl Brown. The officers testified that defendant provided them with an ounce of cannabis and, in response to their request, told the officers that he could provide a gram of cocaine for $100. On cross-examination, the defense attorney elicited the fact that after being paid, defendant grabbed the bag and ran away with the cannabis. He returned a few minutes later and apologized, saying he thought he recognized Randy Jackson as a police officer. He handed the cannabis to Carl Brown, who returned it to the officers. Defendant testified that at this time he knew without doubt that Randy Jackson was a police officer. He also testified that when asked if he could get cocaine, he told them that he could not.

Later, defendant obtained Power's telephone number from Brown and called him to ask if he would still like to buy cocaine. His plan, as he explained it, was to "scam" some money from Power by convincing him to pay for drugs in advance and then to leave town without supplying the cocaine. When he met Power in a parking lot that evening, he was accompanied by Sam Dyer who, upon seeing Power, identified him as a police officer. After talking with Power for a short time, defendant also became convinced that he was dealing with a police officer. He told Power to meet him later that night in the same place. After several meetings with Power, and another phone call, defendant returned to the parking lot, this time in another car driven by his codefendant John Cain. It was at this time that defendant first asked Power to pay for the cocaine in advance, but Power refused. Cain and the defendant left, telling Power they would return later. At the next meeting, after some negotiation and going back and forth between Cain's and Power's cars, defendant testified that Cain told him he wanted to talk directly with Power. Cain pulled the car around so that his window was next to Power's, whereupon, to defendant's surprise, he gave him cocaine and accepted cash in return. Defendant claims he never knew that Cain possessed any cocaine and thought that Cain was planning to rob Power instead of actually selling him drugs.

Testimony of Cain differed markedly from that of defendant. He claimed defendant called him at his home and told him that he had arranged to buy some cocaine, but needed a ride to pick it up. In re-

turn for driving him, defendant would give him some of the cocaine. They first drove to the parking lot, where defendant tried to convince Power to pay in advance. When he refused they drove to another location, picked up the cocaine, and returned to the parking lot. Defendant allegedly told Cain that he would try to "short" Power, but he did not want Power to know that he was responsible. Defendant divided the cocaine, putting some in a separate package. He then gave one package to Cain, and Cain pulled the car around and completed the transaction with Power.

Also relevant is defendant's testimony, elicited by defense counsel, that in 1987 undercover officers had used defendant to set up drug purchases. They gave him money to purchase drugs, but he stole the money and left for California without making a purchase. Defendant claims he knew he would be arrested soon for the October 2, 1990, cannabis sale and hoped to "scam" some money from them again before leaving town. He claims he never planned or intended to sell cocaine to anyone.

## ANALYSIS

Defendant claims the court erred in allowing testimony regarding the prior sale of cannabis. Evidence of collateral crimes is inadmissible if relevant merely to establish the defendant's propensity to commit crimes. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238.) Evidence of the commission of other crimes is admissible, however, when such evidence is relevant to prove *modus operandi*, intent, identity, motive, or absence of mistake. Our supreme court has held that the enumeration of these exceptions should not be considered exclusive.

"Considerable difficulty arises when counsel attempts to fit the facts of the case into these specific exceptions. *** [E]vidence of other crimes committed by defendant may be admitted if relevant to establish *any* material question other than the propensity of the defendant to commit a crime. [Citations.]

*** [I]t is incumbent upon the trial judge to weigh the relevance of the evidence to establish the purpose for which it is offered against the prejudicial effect the introduction of such evidence may have upon the defendant." (Emphasis added.) *People v. Stewart* (1984), 105 Ill. 2d 22, 62, 473 N.E.2d 840, 860.

At trial, the State argued that it was offering evidence of the prior sale of cannabis to show identity, intent, and guilty knowledge. Defendant argues that each of these elements could be proved ade-

quately without any mention of the cannabis sale. Power established defendant's identity when he testified to five separate meetings and two phone calls from defendant. Although intent and knowledge can be shown in the prior cannabis sale through defendant's alleged statement that he could provide cocaine, this same statement was repeated numerous times during his negotiations with Power. Defendant argues that these facts eliminate any need for testimony of the prior cannabis sale.

On appeal, the State argues that evidence of the sale of cannabis was relevant because it established the relationship between the two men and explained how the defendant had acquired the officer's phone number. The prior sale set the background for the initial phone call and gave the jury a more complete picture of the crime charged. The State relies on *People v. Cole* (1963), 29 Ill. 2d 501, 194 N.E.2d 269, for the notion that prior criminal acts may be used to set the background for a sale of drugs. In *Cole*, defendant appealed his conviction for the sale of narcotics, claiming that the trial court erred in admitting evidence of two prior drug sales. The supreme court upheld the admission of the evidence, stating:

> "Considering the stealth with which narcotics transactions are conducted, it is not likely that agent Cook could have merely walked up to defendant, asked for a spoon of heroin, given him $120 *** and had defendant give him the heroin. *** This account becomes plausible, however, when it is explained that *** a special employee introduced Cook to defendant. *** These prior transactions explain and lend credence to the otherwise unrealistic ease with which the Federal agent managed the controlled sale ***." *Cole*, 29 Ill. 2d at 504-05, 194 N.E.2d at 271.

See also *People v. Vazquez* (1989), 180 Ill. App. 3d 270, 535 N.E.2d 981; *People v. Borawski* (1978), 61 Ill. App. 3d 774, 378 N.E.2d 255.

■ Defendant attempts to distinguish these cases, saying that the undercover officers had no contact prior to the transaction for which the defendant was being charged, other than the previous drug sales. In the present case, defendant met with Power several times on the same evening before the transaction was actually complete. The rule in *Cole* is directed toward establishing the plausibility of an initial meeting for a drug sale by showing evidence of prior drug sales. The fact that the parties in the present case required numerous meetings before closing their deal does not change the fact that evidence providing background to their initial meeting is still relevant.

■ Defendant also asserts that the waiver rule applies to the State as well as the defense. Defendant asks that we forbid the State

from offering one basis for the admission of evidence at trial, and a different basis for admission on appeal. No case is cited in support of his argument and we decline to apply his rule here on the basis of this bald assertion. When a party receives a favorable ruling, he or she should not be forced to continue listing additional grounds upon which to admit the evidence.

Next, defendant contends that even if evidence of the prior sale is admissible, it was presented in far too great detail. As such, the prejudicial impact greatly outweighed its probative value. Defendant relies on *People v. Bartall* (1983), 98 Ill. 2d 294, 315, 456 N.E.2d 59, 69, for the notion that a trial court should carefully limit evidence of another crime to that which is relevant to the issue on which the other crime is admitted. The holding in *Bartall* is based on *People v. McKibbins* (1983), 96 Ill. 2d 176, 186-87, 449 N.E.2d 821, 826, wherein the court advised against conducting minitrials on other offenses and, for the sake of judicial economy, advised against admitting such detail.

No "minitrial" was conducted in the case at hand. On the contrary, initial testimony regarding the prior sale of cannabis was limited to a bare summary of the facts leading to the final transaction. In fact, a significant amount of detail was left out of the testimony. It was only upon cross-examination by defense counsel that these details were elicited and, while we cannot blame defense counsel for taking advantage of any positive use of the prior sale, neither can we fault the State for detail that only became excessive on defense counsel's cross-examination.

Perhaps the most persuasive argument for allowing evidence of the prior sale is derived from defendant's statements to the court at the very outset of trial. Defendant called for a change of defense attorney and, in arguing his motion, explained that he was, in effect, a mere bystander to the drug sale, *i.e.*, his sole intent was to "scam" money from Power and the appearance of actual cocaine was a complete surprise. An essential element of the State's case was proof that defendant intended to facilitate the sale of cocaine, despite the fact that he did not personally hand over the drugs or accept the money. After defendant had explained his intended defense in open court, the State had little choice but to anticipate that the same defense would be raised before the jury. In this sense, evidence of the prior sale of cannabis is both relevant and probative of defendant's intent and knowledge.

Defendant next argues a lack of foundation in the admission of the physical evidence of cocaine. Specifically, defendant claims the

State did not prove chain of custody. Defendant did not object at trial, nor was the issue raised in post-trial motion. Defendant's objection to the sufficiency of the foundation for identification of the substance as cocaine may not be raised for the first time on appeal. *People v. Trefonas* (1956), 9 Ill. 2d 92, 136 N.E.2d 817.

■ Defendant also claims he is entitled to a new trial because the State made a material misrepresentation of the law during closing argument. The specific statement reads in relevant part:

"So, based on the defendant's own testimony, even if he isn't the one that gave the packet of cocaine to John Cain, he is—he still assisted John Cain in completing that delivery. So even if you take the defendant's testimony by itself, he is accountable, he is responsible for John Cain's delivery that night of October 17th."

Section 5—2(c) of the Criminal Code of 1961 (Criminal Code), in relevant part, defines the crime of accountability for the conduct of another as when:

"Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1989, ch. 38, par. 5—2(c).)

Our supreme court construed section 5—2(c) of the Criminal Code as incorporating the long-established "common-design rule" and interpreted the statute as holding defendant accountable for the conduct of the person he aids. The court defined "conduct" to encompass *any* criminal act committed with the intent to promote or facilitate the commission of a crime. (*People v. Terry* (1984), 99 Ill. 2d 508, 514-15, 460 N.E.2d 746, 749.) We find no error in the State's representation of the law. Under the "common-design rule," if defendant in the present case knowingly aided Cain in the commission of an offense, he is accountable for any criminal act that arises from this aid, regardless of any intent to actually sell cocaine. Defendant's testimony on cross-examination provides the necessary elements to support the State's application of the "common-design rule":

"Q. [By the prosecutor:] So Cain knew Power was out there trying to buy cocaine—

A. [By Lowry:] Yeah.

Q. (continuing)—from you giving him that information, right?

A. Yes.

Q. And essentially you made the connect[ion] between Power and Cain for that deal to be completed; is that a fair statement?

A. I guess, yes."

Whether defendant ultimately intended to deliver cocaine to the undercover officer is irrelevant—his intent was to aid his codefendant in the commission of an offense, a "scam," and he is legally accountable for the criminal acts that arose from this aid.

Defendant next argues that his sentence should be modified to run concurrently with the sentence he was already serving for violation of bail bond. He claims the trial court failed to specify that a consecutive term was necessary for the protection of the public. Section 5—8—4(b) of the Unified Code of Corrections (Unified Code) states:

"The court shall not impose a consecutive sentence except as provided for in subsection (a) unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(b).

The trial court is not required to recite the language of the statute in reaching its sentencing determination. Rather, the record must show only that the sentencing court is of the opinion that a consecutive term is necessary for the protection of the public. (*People v. Hicks* (1984), 101 Ill. 2d 366, 375, 462 N.E.2d 473, 477.) The trial court is ordinarily best situated to tailor a sentence to the needs of the case and the exercise of this discretion should not be altered upon review, absent an abuse of that discretion. (*Hicks*, 101 Ill. 2d at 375, 462 N.E.2d at 477.) As in *Hicks*, the record clearly shows that after reviewing a number of factors, the trial court was convinced a consecutive term was necessary for the protection of the public. We find the trial court fully complied with the statute.

Had we agreed with defendant and ordered the sentences to run concurrently with the sentence already being served for bail bond violation, then defendant would have us grant sentence credit of 151 days toward the sentences in the present case. As we have affirmed the trial court's decision to have the sentences run consecutively, there is no need to address this issue.

Defendant next argues that his "street-value fine" should be reduced to reflect the actual amount of cocaine seized. Although the parties contracted to sell 1.5 grams of cocaine for $200, the undercover officer spilled most of it in the car and only 0.1 gram of cocaine

was recovered. Section 5—9—1.1 of the Unified Code (Ill. Rev. Stat. 1989, ch. 38, par. 1005—9—1.1) provides for a minimum "street-value" fine, but does not specify any maximum amount. The trial court acted within its discretion in setting the "street-value" fine at the same amount as was paid for the cocaine.

In the alternative, defendant argues that the street-value fine is satisfied by operation of section 110—14 of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 110—14), which provides for a credit of $5 for each day spent incarcerated on a bailable offense. Defendant was incarcerated for a parole violation stemming from a prior conviction for violation of bail bond. As the prior conviction is totally unrelated to the case at hand, no credit for time served under that conviction may be applied toward the street-value fine in the present case. *People v. Leggans* (1986), 140 Ill. App. 3d 268, 488 N.E.2d 614.

Affirmed.

GREEN, P.J., and McCULLOUGH, J., concur.