2020 IL App (1st) 170250-U

FIFTH DIVISION
February 14, 2020

No. 1-17-0250

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 16 CR 9401 |
| | ) | |
| RODNEY STEWART, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE DELORT delivered the judgment of the court.
Presiding Justice Hoffman and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held:* The circuit court did not abuse its discretion in its ruling on defendant's motion *in limine*. The State's remarks during rebuttal, even if improper, amount to no more than harmless error and do not warrant reversal of defendant's conviction. Further, defendant cannot contest an error he invited.

¶ 2    A jury convicted defendant Rodney Stewart of delivery of a controlled substance. The circuit court sentenced him to eight years' imprisonment. On appeal, defendant challenges the admission of evidence of a prior narcotics transaction in which he did not actively participate, arguing that it was highly prejudicial and presented in unnecessary detail. Defendant also contends that the State made improper remarks during closing argument. We affirm.

¶ 3                                    BACKGROUND

¶ 4     The State charged defendant with two counts of delivery of a controlled substance for his participation in a drug transaction that occurred on February 6, 2016. Before trial, the State moved *in limine* to allow evidence of "other crimes," specifically a February 3, 2016 drug transaction. Defendant himself did not participate in the sale of the narcotics on that date, but he was present at the sale location. He introduced himself to an undercover police officer, provided her with his phone number, and instructed her to call him if she desired to purchase narcotics in the future. He then walked away from the undercover officer. Malcolm Reed, who is not a party to this case, sold narcotics to the officer. Later the same day, defendant and Reed were subject to an investigatory stop, during which defendant showed a police officer an identification card displaying his photograph, name, and address.

¶ 5     The State did not charge defendant for any crime that occurred on February 3. Instead, the State moved *in limine* to admit evidence of the February 3 transaction to show *modus operandi*, knowledge, intent, that the crime was part of a common scheme, design, or plan, that circumstances of the crime charged would otherwise be unclear, and identity. The State also sought to admit this evidence because it explained how the undercover officer obtained defendant's phone number and later contacted him to buy narcotics on February 6, 2016.

¶ 6     During the hearing on the State's motion *in limine*, the State argued that the events of February 3 allowed police to learn the identity of defendant. Defendant responded that "no crime occurred. It wasn't charged." The circuit court stated, "Then you don't have to worry about [it]. It's an identification case; is that correct?" Defendant replied, "That's correct."

¶ 7     The circuit court granted the State's motion, concluding that the State is "going to say they know who this guy is from February 6th because they dealt with him on February 3rd. They had

contact with him," and "[y]ou're absolutely allowed to show that [because] [i]t's an identification case." Defendant repeated that the February 3 matter was not charged as a crime and that "[i]f the officer testifies that he was engaged in an uncharged crime three days before is extremely prejudicial." The court stated that the February 3 evidence is "far more probative than prejudicial." The court acknowledged that the February 3 evidence is prejudicial, but "[i]t doesn't mean it's not admissible. It's extremely probative."

¶ 8    At trial, Chicago police officer Janelle Hamilton testified that on February 3, 2016, she worked as an undercover "buy" officer to make a controlled narcotics purchase. Chicago police officers David Bridges and Andrew Camarillo were assigned as surveillance and enforcement officers. Officer Hamilton parked her unmarked car at the intersection of North Lockwood Avenue and West Ohio Street because surveillance officers had observed narcotics transactions by two individuals at that location. She saw defendant standing on the corner with Reed. Defendant wore a black leather jacket on top of a black-hooded sweater. She also observed that defendant wore dreadlocks that protruded from the hood. Reed wore a blue leather jacket with a lighter blue-colored, hooded sweater underneath. She identified defendant sitting in court, noting that he no longer wore dreadlocks. Officer Hamilton testified that February 3 was the first time she saw defendant.

¶ 9    On the day in question, Officer Hamilton drove to the intersection, lowered her window, and asked defendant and Reed "if they were up." Reed walked away from Officer Hamilton's vehicle "to go get the narcotics for me." She then spoke to defendant for two minutes, who stood two feet away from the vehicle. Defendant gave Officer Hamilton his phone number and told her to call him for future narcotics purchases. He identified himself as "Knowledge." She wrote his phone number on a napkin in her car. Defendant also asked Officer Hamilton where she "shot up"

her drugs. She took off her shoe and showed him the area between her toes. At that point, Reed returned to the car and brought Officer Hamilton four bags of what she suspected was heroin. She paid Reed with prerecorded funds given to undercover officers to purchase narcotics. The State then published to the jury a video of the February 3 transaction, during which Officer Hamilton identified both defendant and Reed. Officer Hamilton testified that after the transaction, she drove away from the area and notified the surveillance team of a positive transaction for suspect narcotics. She provided a detailed description of Reed, but not of defendant to the surveillance officers because Reed was "the one who actually sold me narcotics." Later, she prepared a report of the incident, but did not include defendant in the report.

¶ 10   On the morning of February 6, 2016, Officer Hamilton called defendant at the phone number he provided on February 3. She recognized the voice of the person as the man who had identified himself as Knowledge. She told him that she wanted to purchase heroin and he requested that they meet at the same location as on February 3. Officer Hamilton informed her team of police officers of the anticipated transaction and she returned to the 600 block of North Lockwood Avenue in the same undercover car she had driven on February 3. She called defendant to tell him that she had arrived at that location and defendant responded that "he was on his way." Defendant drove to the location in a tan Mazda with a temporary license plate. He parked on the opposite side of the street and walked towards her vehicle. Defendant wore the same black leather jacket from the previous encounter, along with a black knit hat. He kneeled beside Officer Hamilton's car and opened the passenger-side door. She viewed defendant from a few feet away as she sat in the driver's seat of her car and recognized him as the same individual she met on February 3. Defendant gave Officer Hamilton a clear sandwich bag containing some smaller sealed plastic bags. The substance in the bags appeared to be heroin. Officer Hamilton paid defendant $100 in

prerecorded funds. The State then published to the jury a video of the February 6 drug transaction, during which Officer Hamilton identified defendant as the offender. After buying drugs from defendant, she drove away and notified the surveillance team of a positive narcotics transaction. She provided a description of defendant and his last known location. Officer Hamilton then stopped her vehicle and noticed that defendant had sold her only 9 bags of heroin when she had agreed to purchase 11 bags for $100.

¶ 11    Officer Hamilton again called defendant to tell him that he had failed to give her the correct number of bags she had agreed to purchase. Defendant told her to call back in 30 minutes and that he would give her four more bags. Officer Hamilton did not do so. She testified that defendant was not arrested that day for the drug transaction, and explained that suspects are not always arrested on the same day, in order to conceal the undercover officer's identity or purchase additional narcotics. Officer Hamilton stated that she inventoried the narcotics that defendant sold to her and kept them in her custody and control in a sealed condition from the time she received them until she inventoried them.

¶ 12    When Officer Hamilton returned to the police station later that day, she viewed a photograph array to identify defendant. She was told that defendant's photograph may not appear in the lineup and that she was not compelled to make an identification. Officer Hamilton stated that she identified defendant as the offender from the February 6 transaction after viewing the array.

¶ 13    On cross-examination, Officer Hamilton testified that on February 6, defendant identified himself as Knowledge, but never used his real name. In addition, the February 6 video did not show the hand-to-hand transaction. On redirect examination, Officer Hamilton stated that her

February 6 report referred back to the February 3 report and included that defendant had introduced himself as Knowledge on February 3.

¶ 14    Officer Bridges testified that he was working as a surveillance officer on February 3 with the narcotics division. He parked his unmarked vehicle near 602 North Lockwood Avenue to conduct surveillance of Officer Hamilton's drug transaction. He saw her engage in conversation with two black males through the open driver's side window. One of the men wore a black leather jacket and a blue-hooded sweatshirt. The other man, who Officer Bridges identified in court as defendant, wore a black leather jacket and blue jeans. Officer Bridges saw the man in the blue-hooded sweatshirt walk away from Officer Hamilton's car. Defendant remained by Officer Hamilton's car until the other man returned to complete a hand-to-hand drug transaction with Officer Hamilton. After she drove away and notified the surveillance officers of the positive narcotics transaction, Officer Bridges relocated his vehicle to continue monitoring the individuals. He saw them walk into a corner store on West Ohio Street. When they exited the store, Officer Bridges contacted the enforcement officers, who detained the men and conducted a field investigation. Officer Bridges remained on surveillance and observed but did not participate in the field investigation.

¶ 15    Officer Bridges also worked as a surveillance officer on February 6, parking at 601 North Lockwood Avenue for another anticipated drug transaction involving Officer Hamilton. He had an unobstructed front view of Officer Hamilton's vehicle. He watched a tan Mazda approach and park on the west side of the street ahead of Officer Hamilton's car. Officer Bridges observed defendant exit the Mazda, wearing the same black leather jacket that he wore on February 3. He saw defendant walk to the passenger side of Officer Hamilton's car and kneel by the door. He did not see the transfer of drugs from defendant to Officer Hamilton. After defendant returned to his

car, Officer Bridges followed him for a few blocks until enforcement officers arrived. Officer Bridges could see defendant's face as he drove and he identified defendant in court as the same individual he saw during the drug transaction on February 3.

¶ 16    Officer Camarillo testified that he was working as an enforcement officer on February 3 with Officers Hamilton and Bridges. He communicated with his team via push-to-talk radio and, based on the information he received, sought two black men near 5300 West Ohio Street, one wearing a black top or jacket and one dressed in a blue top. Officer Camarillo was directed to a store on that block, where he observed two people walking out who matched the description he had been given. Officer Camarillo identified defendant in court as one of those two people. He conducted an investigatory stop and field investigation to identify defendant and Reed. Defendant provided Officer Camarillo with an identification card that included his name, photograph, and address.

¶ 17    On February 6, Officer Camarillo worked as an enforcement officer assigned to the same team. He parked his unmarked vehicle on the 5300 block of West Ohio Street, near the intersection of Lockwood Avenue. He received information to look for a Mazda with a temporary license plate driven by the same person who engaged Officer Hamilton on February 3. Officer Camarillo observed the Mazda traveling southbound on Pine Avenue at Washington Boulevard. He identified defendant as the individual driving the Mazda. Officer Camarillo stated that he observed defendant's "left profile" and drove past him. He looked back and saw "a little bit more of the front profile." Office Camarillo did not stop defendant at that time because the police knew his identity and "[i]t was an ongoing investigation." He provided defendant's information to Chicago police lieutenant Melvin Roman to create a photograph lineup and investigatory alert. Defendant was not arrested that day.

¶ 18    Chicago police officer Kristin Tracey testified that on May 22, 2016, at about 4:45 p.m., she stopped a white Chevrolet that had proceeded through an intersection with the driver holding a cell phone in his right hand. She identified defendant in court as the person she stopped that day. After processing defendant's information in her squad car's computer, Officer Tracey arrested defendant due to an active investigative alert with probable cause to arrest. No property was inventoried as part of the arrest and the police found neither narcotics nor prerecorded funds on defendant's person.

¶ 19    Danielle Adair, an expert in the area of drug chemistry, testified that she worked as a forensic scientist at the Illinois State Police crime laboratory. Adair stated that she received the narcotics from the February 6 transaction in a sealed condition and, after her analysis of five samples, concluded that the samples contained heroin.

¶ 20    During closing argument, the State contended that defendant knowingly delivered heroin to Officer Hamilton and that a team of police officers identified defendant as an offender beginning with the drug transaction that occurred on February 3. The State told the jury:

>    "The judge will tell you that evidence has been received that the defendant has been
>
>    involved in conduct other than that charged in the indictment. This evidence has
>
>    been received on the issue of the defendant's identification and may be considered
>
>    by you only for that limited purpose."

The State argued that it was for the jury to weigh the evidence, including the opportunity the witnesses had to view defendant at the time of the offense "to determine whether the defendant was involved in that conduct and if so, what weight should be given to this evidence on the issue of identification." The State then recounted the evidence of the officers who viewed defendant both on February 3 and 6 and how they were able to identify defendant as the offender.

¶ 21    Defendant argued that this was a case of mistaken identity. Defendant challenged the police officers' identification of him and argued that they confused him with someone else. Defense counsel stated to the jury:

> "[Y]ou will be able to see that just because there's a black guy on the video, and there is a black guy sitting in front of you, they're not the same person. All black people do not look a like [*sic*]."

¶ 22    Defendant also argued:

> "You have questions in the jury room about evidence that wasn't presented. It's on them. If you want to know why so few enforcement officers testified? It's on them.
>
> You want to know why only one surveillance officer testified. It's on them. You want to know why the video started late and ended early, it's on them. You want to know why there's no phone records to corroborate these phone calls? That's on them.
>
> You want to know why there is no car records, no vehicle records, no ownership records of who owned the car when? It's on them. They chose to not put that evidence forward."

¶ 23    Defendant continued, "when you go back to the jury room to deliberate, you don't just get to consider what was presented here. You're also allowed to consider what wasn't presented here." He argued that the State "never presented to you any independent verifiable scientific evidence that links [defendant] to this." Defendant contended that the State failed to present DNA evidence, phone records, or fingerprints tying him to the crime. Defendant also argued that reasonable doubt existed because the police had failed to conduct an "ongoing investigation." None of the police

officers assigned to the case called defendant again, went to his residence, or followed up the paperwork reporting the two drug transactions. Finally, he argued that the police officers who viewed the drug transaction on February 6 never arrested him even though they each identified him as the offender.

¶ 24    During rebuttal, the State argued:

"Here's the numbers we have. Over 75 narcotics operations done by Officer Hamilton. Over 16 years of experience, Officer Camarillo. Over 17 years of experience, Officer Bridges, two videos, four identifications from this witness stand of that guy, one photo array.

All those numbers add up to one thing[:] 100 percent certainty in your minds that these police officers got the right person. The evidence that you did not hear[:] fingerprint, DNA, phone records, additional surveillance officers, additional enforcement officers. Do you want to sit here in this -- in your jury seats for four more days[?]"

¶ 25    The circuit court overruled defendant's objection to this statement. The State continued:

"Or can I just press play on the video. What would you prefer? Fingerprints? Who touched these drugs? Officer Hamilton touched these drugs. Was she wearing gloves when she touched them?

Twice send this to be tested for fingerprint[s], and what comes back? Officer Hamilton's fingerprints. Well, what does that prove? DNA. Did the defendant bleed on these drugs.

***

Phone records, again, we bring in an expert witness to testify about the defendant's phone records where -- who calls who on which day. How long do you want to sit here[?]"

¶ 26 Again, the circuit court overruled defendant's objection. The State also argued that the videos published to the jury definitively reinforce the police officers' identification of defendant. The State contended, "Who thinks all black people look alike" Well, defense counsel does." When the circuit court overruled defendant's objection, the court stated, "[i]nvited comment. Go ahead." The State continued, "[a]ll black people look alike according to the defense. This is Malcolm Reed. This is the defendant. You have the video of Malcolm Reed. Watch it. They don't look alike."

¶ 27 Finally, the State argued that it "has the burden to prove the defendant guilty beyond a reasonable doubt and not beyond all doubt." The circuit court overruled defendant's objection. The court instructed the jury:

"Evidence is received and has been received that the defendant has been involved in conduct other than that charged in the indictment. This evidence has been received on the issue of defendant's identification and may not be considered by you -- it may be considered by [you] only for that limited purpose. *** It is for you to determine whether the defendant was involved in that conduct and, if so, what weight should be given on the issue of identification."

¶ 28 During deliberations, the jury sent a note asking to view a side profile mug shot of defendant. Upon agreement of the parties, the court instructed the jury that it had received all the exhibits in evidence and should continue to deliberate.

¶ 29    The jury found defendant guilty of delivery of a controlled substance. The circuit court denied defendant's motion for a new trial and sentenced him to eight years' imprisonment. The court also denied defendant's motion to reconsider sentence. This appeal followed.

¶ 30                                ANALYSIS

¶ 31    Defendant argues that the circuit court erred by granting the State's motion *in limine* to allow evidence of the February 3, 2016 drug transaction in which he did not participate. He also contends that the State made improper remarks during closing argument. We address each in turn.

¶ 32                        The State's Motion *In Limine*

¶ 33    In this case, the circuit court granted the State's motion *in limine* to allow evidence of "other crimes" that occurred on February 3, in which Reed, but not defendant, delivered narcotics to Officer Hamilton. The court found evidence of the February 3 transaction admissible to establish defendant's identity. Defendant argues that this evidence was highly prejudicial and presented in "excruciating detail," creating a "mini-trial" of the offense, one in which he neither committed nor was charged. He contends the State devoted half of the trial to presenting prejudicial evidence of what occurred on February 3. Defendant, however, acknowledges in his opening brief that "this incident was only relevant because [he] allegedly spoke to Officer Hamilton while she waited in her car." Nevertheless, he argues that the abundance of evidence presented from the events of February 3 was far more prejudicial than probative and denied him a fair trial.

¶ 34    "A defendant's guilt must be established by legal and competent evidence, uninfluenced by bias or prejudice raised by irrelevant evidence." *People v. Bernette*, 30 Ill. 2d 359, 371 (1964). The determination of whether evidence was "legal and competent" hinges, in turn, on whether the evidence was relevant and admissible. Although a defendant has the right to present a defense (*People v. Manion*, 67 Ill. 2d 564 (1977)), a circuit court may prevent a defendant from introducing

irrelevant or unreliable evidence. *People v. Hayes*, 353 Ill. App. 3d 578, 583 (2004). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). And relevant evidence is admissible so long as its probative value is not substantially outweighed by the danger that it will unduly prejudice the party against whom it is admitted. Ill. R. Evid. 403 (eff. Jan. 1, 2011). However, if the probative value of such evidence is outweighed by its prejudicial effect, the court may exclude it. *People v. Cruz*, 162 Ill. 2d 314, 348 (1994).

¶ 35    Generally, evidence that the defendant in a criminal case has engaged in other bad acts on a different occasion is not admissible to show that the defendant has a propensity to commit crime. Ill. R. Evid. 404(b) (eff. Jan. 1, 2011); *People v. Pikes*, 2013 IL 115171, ¶ 13. Courts disfavor the inference that because an individual has previously committed crimes he or she is more likely to have committed the crime on trial. *Cruz*, 162 Ill. 2d at 348. Under Illinois Rule of Evidence 404(b) (Ill. R. Evid. 404(b) (eff. Jan. 1, 2011)), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." It may, however, be admissible for purposes other than propensity, such as to show *modus operandi*, intent, motive, identity, or absence of mistake. *Pikes*, 2013 IL 115171, ¶¶ 11-12. Indeed, Illinois courts repeatedly have held that "evidence of other crimes is admissible "if it is relevant *for any purpose other than* to show the propensity to commit crimes." (Emphasis in original.) *Cruz*, 162 Ill. 2d at 349 (quoting *People v. Phillips*, 127 Ill. 2d 499, 520 (1989)). Nevertheless, the circuit court must still weigh the probative value of the evidence against its prejudicial effect. *Pikes*, 2013 IL 115171, ¶ 11.

¶ 36    In assessing the circuit court's decision regarding the admission of evidence, we must determine whether the proffered testimony would have made the question of the defendant's guilt of the charged offenses more or less probable. *Hayes*, 353 Ill. App. 3d at 583. It is axiomatic that "[i]n all criminal cases it is important that the evidence be fairly limited to the issue on trial, as collateral or extraneous matters can only mislead or prejudice a jury." *People v. Pickett*, 34 Ill. App. 3d 590, 598-99 (1975). The admissibility of evidence sought to be excluded as irrelevant is committed to the sound discretion of the circuit court, and we will only reverse a decision whether to admit evidence if the court abused its discretion. *People v. Becker*, 239 Ill. 2d 215, 234 (2010). An abuse of discretion occurs when the trial court's decision is "arbitrary, fanciful or unreasonable," or where "no reasonable person would agree with the position adopted by the trial court." *Id.*

¶ 37    On appeal, both parties argue this issue within the context of "other crimes" evidence even though during trial, defendant acknowledged that "no crime occurred. It wasn't charged." The circuit court understood that the February 3 transaction was not charged, but it found evidence of the transaction that day was relevant to establish defendant's identity.

¶ 38    "When the State seeks admission of other-crimes evidence, it must first show that a crime took place and that the defendant committed it or participated in its commission." *Pikes*, 2013 IL 115171, ¶ 15. The concern raised when admitting evidence of other crimes "is not that such evidence is lacking in probative value, but that it may overpersuade the jury, which might convict the accused because it believes he or she is a bad person." *Id*. ¶ 16 (citing *People v. Richardson*, 123 Ill. 2d 322, 339 (1988)). Our supreme court in *Pikes* held:

"It is evident, therefore, that the concerns underlying the admission of other-crimes evidence are not present when the uncharged crime or bad act was not committed

14

by the defendant. In such a case, there is no danger that the jury will convict the defendant because it believes he or she has a propensity to commit crimes. Thus, the threshold requirement to show that the defendant, and not someone else, committed the crime does not apply." *Id.*

¶ 39 In *People v. Manuel*, 294 Ill. App. 3d 113, 124 (1997), the court provided an analysis of when conduct should be considered evidence of "other crimes." The court stated that the conduct " 'must have been *extrinsic* to the matter being tried, not contained in it, not part of it.' " (Emphasis in original.) *Id.* (quoting Mauet, Wolfson, *Trial Evidence*, ch. V, p. 102 (1997)). In contrast, " '[w]hen the prior conduct is *intrinsic* to the matter being charged, belonging to it, part of it, or, as some cases say "inextricably intertwined" or a "continuing course of conduct," [the rules of evidence for other crimes] is not implicated, and the general principles of relevance apply.' " (Emphasis in original.) *Id.* The court continued:

> " 'Moreover, where the evidence of the act and the evidence of the crime charged are inextricably intertwined, the act is not extrinsic and the rule relating to "other crimes" evidence is not implicated, simply because such evidence formed an integral and natural part of the witness's account of the circumstances surrounding the offenses for which the defendant was indicted.' " *Id.* (quoting *Cleary and Graham's Handbook of Illinois Evidence* (6th ed. 1994), art. IV, § 404.5, p. 218).

¶ 40 In *Manuel,* the defendant was charged with delivering cocaine after he arranged a sale to a police informant working with an undercover police officer. *Id.* at 116. Over the defendant's objection, the circuit court admitted evidence that the defendant had arranged prior drug sales with the same police informant. *Id.* at 123. To challenge his conviction, the defendant argued that admission of drug sales prior to the one for which he was charged was impermissible because it

constituted "other crimes" evidence. *Id*. This court affirmed, explaining that the evidence did not constitute "other crimes" evidence unrelated to the charged offense because the previous drug sales were precursors to the actual crime and provided context. *Id*. at 123-24. Even though the earlier sales were not part of the drug sale for which the defendant was charged, the earlier drug sales "were a necessary preliminary to the current offense." *Id*. at 124. As such, the evidence of the previous drug sale was subject only to ordinary relevancy analysis. *Id*. Applying those principles, this court held "the evidence was relevant to show Manuel's course of conduct and his illicit relationship" with the informant. *Id*.

¶ 41     The evidentiary rule followed in *Manuel* applies with equal force here. The February 3 transaction did not constitute "other crimes" evidence unrelated to the charged offense considering defendant's conduct on that date. Particularly, defendant's interaction with Officer Hamilton wherein he provided her with his phone number and offered to sell her drugs at a future time, foreshadowed the actual crime and provided context for the February 6 drug sale. Even though the February 3 transaction was not part of the drug sale for which defendant was charged, the earlier drug sale was "a necessary preliminary to the current offense." *Manuel*, 294 Ill. App. 3d at 124. We find that the evidence of February 3 and the evidence of the crime charged are inextricably intertwined. Therefore, the evidentiary rule relating to "other crimes" is not implicated and ordinary relevancy rules apply. *Id*; see also *Pikes*, 2013 IL 115171, ¶ 16. Evidence is generally admissible if it is relevant. Ill. R. Evid. 402 (eff. Jan. 1, 2011).

¶ 42     In this case, the February 3 evidence was relevant to show defendant's course of conduct that explained the events leading up to the February 6 drug transaction, which involved the same undercover officer from the prior sale. The introduction of this evidence provides context for why Officer Hamilton met defendant at the time and location he requested, for the purposes of

conducting a drug transaction. Without this evidence, the jury would be left to wonder why Officer Hamilton chose the exact date, time, and location to meet defendant for a drug sale. "Although the State possibly could have proved its case without this evidence, there is no rule that requires the State to present a watered-down version of events simply because otherwise highly probative evidence is unflattering to defendant." *People v. Rutledge*, 409 Ill. App. 3d 22, 26 (2011). We find the February 3 evidence highly probative because it provided facts leading up to the commission of the crime concerning course of conduct, identity, and intent. We conclude that evidence of the February 3 transaction was admissible in that its probative value did not substantially outweigh the danger that it would unduly prejudice defendant. Ill. R. Evid. 403 (eff. Jan. 1, 2011). We find no abuse of discretion.

¶ 43    Even if we considered the February 3 transaction as "other crimes" evidence, it is well established that evidence of participation in a narcotics transaction by a defendant other than the one for which he is being tried is relevant and properly admissible to prove identity, knowledge, or to show a design or system. *People v. Cole*, 29 Ill. 2d 501, 503 (1963); see also *People v. Vasquez*, 180 Ill. App. 3d 270, 278 (1989); *People v. Borawski*, 61 Ill. App. 3d 774, 779 (1978). Moreover, to prove identity, the State must present "a strong and persuasive showing of similarity between the charged crime and the other-crimes evidence." *People v. Allen*, 335 Ill. App. 3d 773, 780 (2002) (citing *People v. Robinson*, 167 Ill. 2d 53, 65 (1995)). "This high degree of similarity is necessary because proving identity under a theory of *modus operandi* involves reliance on an inference that a distinctive pattern of criminal activity earmarks the crimes as the work of a particular individual or group." *Robinson*, 167 Ill. 2d at 65 (citing M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 404.5, at 195 (5th ed. 1990)).

¶ 44     Further, in *People v. Lowry*, 231 Ill. App. 3d 788, 793 (1992), which involved unlawful delivery of a controlled substance (cocaine) to an undercover officer, this court held that evidence of a prior sale of cannabis to the same officer, during which time the defendant told the officer he could supply him with cocaine, was relevant to show the plausibility of the meeting for the later drug sale. In *Borawski,* 61 Ill. App. 3d at 779, the defendant was charged with the unlawful delivery of methylphenidate (Ritalin) to an undercover agent. At trial, the State proffered evidence that the defendant discussed with the agent a possible future drug sale. The State also introduced evidence of three prior sales of Ritalin to the same agent during the previous four days. On appeal, this court found no error in admitting the evidence of the prior drug transactions, as it showed the established relationship between the defendant and the agent and explained the ease with which the agent was able to obtain the Ritalin. *Id.* at 779; see also V*asquez,* 180 Ill.App.3d at 278.

¶ 45     In this case, defendant contested the issue of identity at trial. Thus, evidence of the February 3 transaction was relevant to establish the identity of defendant as the person who approached Officer Hamilton, introduced himself as Knowledge, provided her with his phone number, and then offered to sell narcotics to her at a future date. The evidence of the February 3 transaction was relevant to establish identity, as well as to show the plausibility of the February 6 drug sale. We find no abuse of discretion. *Cole*, 29 Ill. 2d at 503; *Vasquez*, 180 Ill. App. 3d at 278.

¶ 46     Defendant also argues that the circuit court erred by allowing such a large quantity of "other crimes" evidence that it led "to a mini-trial of the collateral offense." Other-crimes evidence should not lead to a "mini-trial" on the other offenses. *People v. McKibbins*, 96 Ill. 2d 176, 186-87 (1983). We have already concluded that the February 3 drug transaction did not constitute "other crimes" and, therefore, is subject to analysis under ordinary relevancy principles. *Pikes*, 2013 IL 115171, ¶ 20; *Manuel*, 294 Ill. App. 3d at 124. Even relevant evidence, however, may be excluded if its

probative value is substantially outweighed by the danger of unfair prejudice. Ill. R. Evid. 403 (eff. Jan. 1, 2011). The questions of relevance and probative value fall within the discretion of the circuit court and its decision will not be disturbed absent an abuse of discretion. *People v. Wilson*, 214 Ill. 2d 127, 136 (2005).

¶ 47    In *People v. Bartall*, 98 Ill. 2d 294, 315 (1983), our supreme court noted the importance of avoiding a "mini-trial" of another incident to establish enough acts from which the defendant's intent may be inferred. Even when admitted, the other offense evidence must not become a focal point of the trial. *People v. Thigpen,* 306 Ill. App. 3d 29, 37 (1999) (testimony about other murders and photos of victims sent to jury were irrelevant; limiting instruction did not cure resulting unfair prejudice). However, when courts limit evidence of another crime to what is relevant to the issue for which the other crime is admitted, even detailed evidence is *not necessarily* prejudicial error. See *Bartall*, 98 Ill. 2d at 315.

¶ 48    The record in this case does not demonstrate defendant's claim of "overkill in the presentation of other offense evidence." See *People v. Bedoya*, 325 Ill. App. 3d 926, 941 (2001). *Bedoya* held that the circuit court improperly allowed the State to "put on a trial within a trial" when it introduced voluminous evidence of the defendant firing a gun from a car at three buildings shortly before he murdered the victim during a struggle at a tavern. *Id*. at 940-41. There, the State presented 7 witnesses and 27 exhibits to support its claim that the defendant fired the three gunshots although he was not on trial for the discharge of the weapon. The court concluded "[w]e do not see how, as a matter of law, the earlier shots at three buildings could make it more probable that the defendant intentionally fired his gun during the struggle with [the victim]." *Id*. at 939.

¶ 49    In this case, the circuit court limited the February 3 evidence to the relevant issue of defendant's identification. Contrary to defendant's argument, the State did not present a

voluminous amount of evidence regarding the February 3 drug transaction. In his opening brief, defendant acknowledged that "[t]he main issue in this case was the identity of the individual who sold narcotics to Officer Hamilton on February 6." Defendant disputed his involvement in and presence at the February 3 transaction. He argued that the police misidentified him as the person who engaged Officer Hamilton on February 3 and provided her with his phone number. Therefore, the State necessarily presented evidence to establish defendant as the individual who was present at the February 3 transaction. We find this evidence was more probative than prejudicial. Furthermore, the court instructed the jury to consider the February 3 evidence for the limited purpose of identification. We find no abuse of discretion in admitting evidence of the February 3 transaction because it showed the established relationship between defendant and Officer Hamilton, which in turn explained the circumstances leading to the February 6 transaction. *Lowry,* 231 Ill. App. 3d at 793-94.

¶ 50    Defendant also argues that the erroneously admitted other-crimes evidence was not harmless beyond a reasonable doubt. We have found no error in the introduction at trial of evidence concerning the February 3 transaction. Even assuming *arguendo* that the circuit court erred in admitting this evidence, the error was harmless beyond a reasonable doubt because the evidence was not closely balanced. See *People v. Nixon*, 2015 IL App (1st) 130132, ¶ 120; see also *People v. Miller*, 173 Ill. 2d 167, 195 (1996); *People v. Carlson*, 92 Ill. 2d 440, 449 (1982) (evidentiary errors may be considered harmless if the other properly admitted evidence is overwhelming). In the harmless-error analysis, the State bears the burden of persuasion, and must prove beyond a reasonable doubt that the verdict would have been the same absent the error. *People v. Thurow*, 2013 Ill. 2d 352, 363 (2003).

¶ 51 Alleged trial errors, such as the admission of other-crimes evidence, are harmless error when "there is no reasonable probability that the jury would have acquitted defendant absent the hearsay testimony." *People v. Nevitt*, 135 Ill. 2d 423, 447 (1990). "Hearsay identification is reversible error only when it serves as a substitute for courtroom identification or when it is used to strengthen or corroborate a weak identification." *People v. Davis*, 285 Ill. App. 3d 1039, 1045 (1996) (citing *People v. Colon*, 162 Ill. 2d 23, 34 (1994)). "If it is merely cumulative or supported by a positive identification and by other corroborative circumstances, it constitutes harmless error." *Davis*, 285 Ill. App. 3d at 1045.

¶ 52 Even without the admission of evidence of the February 3 transaction, the jury heard overwhelming evidence of defendant's guilt. Officer Hamilton testified that she called defendant's telephone number on February 6 and told him that she wanted to buy heroin. Defendant told Officer Hamilton when and where to meet her and he subsequently arrived at the time and location he had arranged. Officer Hamilton had a close view of defendant as she purchased the drugs. She identified defendant in court as the same individual from whom she bought heroin on February 6. Officer Hamilton also identified defendant in a photograph lineup. Officers Bridges and Camarillo likewise identified defendant in court as the same individual who sold drugs to Officer Hamilton on February 6. Each officer described defendant, the vehicle he drove that day, and the facts concerning the transaction in sufficient detail. In addition, the jury viewed a surveillance video of the February 6 transaction, which corroborated the officers' testimony. Thus, the February 3 evidence was supported by the officers' positive identifications and by other corroborative circumstances on February 6. Therefore, any error from the admission of the February 3 transaction was harmless. *Nevitt*, 135 Ill. 2d at 447; *Davis*, 285 Ill. App. 3d at 1045.

¶ 53    Defendant also contends the circuit court should have provided a contemporaneous instruction to the jury at the time the evidence of the February 3 transaction was introduced. The failure to issue a limiting instruction at the time the evidence of other crimes is admitted, however, is not reversible error. *People v. Heard*, 187 Ill. 2d 36, 61 (1999). The circuit court is not obligated to issue such an instruction *sua sponte* (*People v. Musitief*, 201 Ill. App. 3d 872, 877 (1990)), and the absence of such a limiting instruction is not plain error (*People v. Denny*, 241 Ill. App. 3d 345, 360 (1993)). Here, we find no reversible error because the court was not obligated to issue a contemporaneous instruction. *Heard*, 187 Ill. 2d at 61; *Musitief*, 201 Ill. App. 3d at 877. The court properly provided a limiting instruction concerning the February 3 transaction at the end of trial.

¶ 54                                    Closing Argument

¶ 55    Defendant next argues that the State's remarks during closing argument were improper because it argued facts not in evidence, disparaged defense counsel's character by stating that he believed "all black people look alike," and improperly quantified "reasonable doubt." He contends that these errors deprived him of a fair trial.

¶ 56    "Every defendant is entitled to fair trial free from prejudicial comments by the prosecution." *People v. Young*, 347 Ill. App. 3d 909, 924 (2004). However, a "defendant faces a substantial burden in attempting to achieve reversal based upon improper remarks made during closing argument." *People v. Moore*, 358 Ill. App. 3d 683, 693 (2005). " 'Generally, prosecutors have wide latitude in the content of their closing arguments.' " *People v. James*, 2017 IL App (1st) 143036, ¶ 46 (quoting *People v. Evans*, 209 Ill. 2d 194, 225 (2004)). "It is, of course, error for a prosecutor to misstate the evidence." *People v. Darr*, 2018 IL App (3d) 150562, ¶ 71. However, prosecutors may comment on the evidence and reasonable inferences from the evidence. *People v. Williams*, 2015 IL App (1st) 122745, ¶ 12. A prosecutor's closing argument must be viewed in

its entirety and any challenged remarks must be viewed in context. *People v. Thompson*, 2016 IL App (1st) 133648, ¶ 47. Improper remarks by a prosecutor are only cause for reversal if they " 'engender substantial prejudice against a defendant such that it is impossible to say whether or not a verdict of guilt resulted from them.' " *James*, 2017 IL App (1st) 143036, ¶ 46 (quoting *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007)).

¶ 57    Initially, we note that it is unclear whether the proper standard of review for prosecutorial misconduct in closing arguments is *de novo* or abuse of discretion. *People v. Phillips*, 392 Ill. App. 3d 243, 274-75 (2009) (comparing *People v. Wheeler*, 226 Ill. 2d 92, 121 (2007) ("Whether statements made by a prosecutor at closing argument were so egregious that they warrant a new trial is a legal issue this court reviews *de novo*"), with *People v. Blue*, 189 Ill. 2d 99, 132 (2000) ("[W]e conclude that the trial court abused its discretion" by allowing various prosecutorial remarks during closing argument)). Regardless, we need not resolve this issue at this time because the outcome here is the same under either standard. *Phillips*, 392 Ill. App. 3d at 275.

¶ 58    During rebuttal, the State twice implied that it would have introduced additional evidence against defendant if not for the fact that it wanted to save the jury from a longer trial. Defendant argues that these comments were improper because they referred to evidence that the State claimed to possess, *i.e.*, fingerprint, DNA, phone records, and additional witness testimony, but did not present to the jury.

¶ 59    The State responds that its remarks during closing argument do not require a new trial because they commented on the evidence presented, explained why additional evidence was not necessary in light of the substantial evidence of defendant's guilt, and responded to defendant's argument about evidence that had not been presented to the jury. The State contends that its comments about how long the jury wished to " 'sit here' merely served to make a rhetorical point

about the absurdity of the defense's argument that fingerprints, DNA, or phone records were somehow necessary where the evidence of the defendant's guilt was already substantial."

¶ 60    In *People v. Willis*, 2013 IL App (1st) 110233, the defendant contended the State's rebuttal argument improperly disparaged defense counsel by claiming his argument was based on something other than the evidence. *Willis*, 2013 IL App (1st) 110233, ¶ 106. The defendant argued in his opening statement that the State had no physical evidence, including DNA and fingerprints, to connect him to the offense. During closing argument, defense counsel reiterated that the State "was not going to [be] able to show you a number of things," including physical evidence. *Id*. ¶ 107.  In rebuttal, the State argued:

"[D]efense counsel, "who is an experienced attorney, who knows what goes on in the courtroom, talked to you about DNA. *** He said there would be no DNA to link this Defendant to the crime, absolutely, [but] [t]here is no DNA to link this Defendant to the crime. You know why? Because it's not a sex case. There's no bodily fluid left behind by the Defendant at the crime scene, but because DNA is a buzz word, and you folks are jurors, and you are really not experienced in what goes on in the Criminal Court Building, you are being told to look for DNA where there isn't going to be any.

Why? Why are you being told to look for DNA when he knows there isn't going to be any, when it isn't a DNA case? To get you to not pay attention to what did come from that witness stand, the testimony of the witnesses ***.""

¶ 61    The *Willis* court found the State's remarks "legitimately respond[ed] to defense counsel's closing argument" when viewed from within the context of both parties' entire argument. *Id*. ¶ 110. The court stated that, "[w]hile the prosecution may not accuse defense counsel of attempting

24

to create reasonable doubt by confusion, misrepresentation, or deception, the prosecution may fairly comment on defense counsel's characterizations of the evidence and may respond in rebuttal to statements of defense counsel that noticeably invite a response." (Internal citations omitted.) *Id*.

¶ 62    Here, we also find that, when viewed from the context of both parties' entire argument, the State fairly commented on defendant's characterizations of the evidence and responded in rebuttal to statements of defendant that noticeably invited a response. *Id*. However, unlike *Willis*, the State here took its comments a step further when it repeatedly asked the jury how much longer it wanted to sit and listen to the case if the State presented additional evidence. While we find this argument was entirely improper, when viewed in the context of the entire trial, it was not so inflammatory that defendant did not receive a fair trial or call into question the integrity of the judicial process. *Evans*, 209 Ill. 2d at 225 (quoting *People v. Jones*, 156 Ill. 2d 225, 247-48 (1993) (quoting *People v. Yates*, 98 Ill. 2d 502, 533 (1983))) ("A reviewing court will find reversible error based upon improper comments during closing arguments only 'if a defendant can identify remarks of the prosecutor that were both improper and so prejudicial that "real justice [was] denied or that the verdict of the jury may have resulted from the error." ' "). Furthermore, the circuit court properly instructed the jury on the burden of proof and to follow the evidence presented at trial that clearly pointed to defendant.

¶ 63    Defendant's reliance on *People v. Rogers*, 172 Ill. App. 3d 471 (1988) is misplaced. There, the prosecutor's argument was speculation based on the absence of evidence which he may have easily presented to the jury, but did not. The prosecutor argued that only the defendant could have provided his alleged confession to police officers when the record showed the officers " 'did not directly testify that they had not talked to any witnesses before interviewing defendant.' " *Id*. at

476. In short, the prosecutor misstated the evidence, which is not what occurred in this case. *Rogers* is inapplicable.

¶ 64    Next, defendant argues the State improperly disparaged defense counsel's character when it stated that counsel believed "all black people look alike." The circuit court ruled that defendant invited this comment by stating, "because there's a black guy on the video, and there is a black guy sitting in front of you, they're not the same person. All black people do not look alike."

¶ 65    Defendant is correct that "personal attacks upon defense counsel" are "unprofessional and highly improper." *People v. Burnett,* 27 Ill. 2d 510, 518 (1963). "[S]tatements may not be made in closing arguments solely to arouse and inflame the passions of the jury." *People v. Lucas,* 132 Ill. 2d 399, 437 (1989). Further, "appeals to racial prejudice are to be condemned." *People v. Eddmonds*, 101 Ill. 2d 44, 66 (1984). However, improper remarks during closing arguments do not constitute error unless they result in substantial prejudice to the accused. *Lucas*, 123 Ill. 2d at 437.

¶ 66    Here, defendant cannot now object to the State's remark in rebuttal when defense counsel invited the alleged error. A defendant cannot complain on appeal about an error that was "procured or invited by the defendant" at trial. *People v. Harvey,* 211 Ill. 2d 368, 386 (2004); *People v. Bush,* 214 Ill. 2d 318, 333 (2005); *People v. Caffey,* 205 Ill. 2d 52, 114 (2001); see also *People v. Hawkins*, 181 Ill. 2d 41, 58 (1998) ("[T]he law is understandably reluctant to aid litigants responsible for the very errors of which they complain"). Throughout the trial, defendant challenged his identification as the offender. Defense counsel invited a response from the State in rebuttal when he challenged the officers' identification of defendant as being solely based on his race. Defendant cannot contest an error he invited. *Caffey*, 205 Ill. 2d at 114.

¶ 67    Ultimately, we reiterate that prosecutors are afforded wide latitude during closing argument and that any improper remarks delivered during closing or rebuttal arguments do not warrant a

new trial unless they resulted in substantial prejudice to the defendant. *People v. Wheeler*, 226 Ill. 2d 92, 122-23 (2007). Here, we are unable to conclude that the objectionable statement made by the State constituted a material factor in defendant's conviction. We find no error.

¶ 68    Defendant also argues that the State improperly defined "reasonable doubt" during rebuttal, stating that it "has the burden to prove the defendant guilty beyond a reasonable doubt and not beyond all doubt." The State responds that reversal is not warranted because the remarks were brief, isolated, and did not deprive defendant of a fair trial.

¶ 69    It is well-established that neither the circuit court nor the attorneys should attempt to define the reasonable doubt for the jury. *People v. Downs*, 2015 IL 117934, ¶ 19. This is because " 'reasonable doubt' is self-defining and needs no further definition." *Id.* But our supreme court has previously found substantially identical language from the State during closing argument to be proper and not shift or minimize its burden of proof. See, *e.g.*, *People v. Moore*, 171 Ill. 2d 74, 104 (1996) (finding nothing improper with the State asserting "[defense counsel] would have you believe there's an impossible burden to be met, but the burden here is the same burden as in every courtroom in this building and every courtroom in Will County, going on everywhere in the United States from 1776 to date, and it's met every single day"); *People v. Phillips*, 127 Ill. 2d 499, 527-28 (1989) (finding nothing improper with the State asserting that the reasonable doubt standard "is the same standard, the same burden that is applicable in all criminal cases. *** Every criminal case that is tried in this courtroom, in this county, in this state and in this country in any type of criminal case" and the State remarking that reasonable doubt "is not proof beyond all doubt, it is not proof beyond any doubt, it is proof beyond a reasonable doubt").

¶ 70    Similarly, this court has previously found substantially identical language from the State during closing argument to be proper and not shift or minimize its burden of proof. See *e.g.*, *People*

*v. Thompson*, 2013 IL App (1st) 113105, ¶¶ 90-91 (finding nothing improper with the State asserting that the reasonable doubt standard "isn't beyond any doubt in the world, any crazy doubt") (Emphasis omitted); *People v. Burney*, 2011 IL App (4th) 100343, ¶¶ 66-68 (finding nothing improper with the State asserting that the reasonable doubt standard "does not mean beyond all doubt"); *People v. Laugharn*, 297 Ill. App. 3d 807, 810-12 (1998) (finding nothing improper with the State asserting that the reasonable doubt standard is "not beyond all doubt or any doubt") (Emphasis omitted). In the present case, the State discussed the reasonable doubt standard in substantially similar terms to the State's remarks in *Moore*, *Phillips*, *Thompson*, *Burney* and *Laugharn*, which were all deemed proper. Consequently, the State's remarks did not shift or minimize its burden of proof.

¶ 71   Nevertheless, defendant implores us to apply this court's decisions in *People v. Burman*, 2013 IL App (2d) 110807 and *People v. Mena*, 345 Ill. App. 3d 418 (2003). In *Burman*, 2013 IL App (2d) 110807, ¶ 40, the State asserted in closing argument that reasonable doubt was " 'not beyond all doubt' " and was " 'not beyond an unreasonable doubt.' " This court criticized the State for its comments and found them to improperly define reasonable doubt by "describing what it is not." *Id.* ¶ 44. In *Mena*, 345 Ill. App. 3d at 427, the State asserted in closing argument that it " 'need not prove guilt beyond all doubt, and that juries across the country find evidence in other cases sufficient to meet the burden.' " This court criticized the State for its comments and found them to be improper. *Id.* However, both decisions stand in contrast to *Moore*, *Phillips*, *Thompson*, *Burney* and *Laugharn*, and the weight of authority therefore goes against defendant's position. See *People v. Moody*, 2016 IL App (1st) 130071, ¶ 65 (noting the contrast between other cases and *Burman*); *People v. Ward*, 371 Ill. App. 3d 382, 422-23 (2007), *abrogated on other grounds by People v.*

*Ayres*, 2017 IL 120071 (noting the contrast between other cases and *Mena*). The decisions in *Burman* and *Mena*, therefore, do not persuade us.

¶ 72    In any event, both courts in *Burman*, 2013 IL App (2d) 110807, ¶ 47 and *Mena*, 345 Ill. App. 3d at 427, found that the State's comments did not rise to the level of reversible error. Although we do not find the State's comment about reasonable doubt exceeded the bounds of reasonable argument, assuming *arguendo* that it was improper under *Burman* and *Mena*, it clearly would not have risen to the level of reversible error. Moreover, the circuit court properly instructed the jury on the burden of proof.

¶ 73    Finally, defendant argues that the cumulative impact of prosecutorial misconduct prejudiced the jury to the extent that he was denied a fair trial. Defendant contends these errors were not harmless. In addition, he argues that the errors were compounded because the State's evidence was not overwhelming.

¶ 74    In instances where individual errors committed by the circuit court do not merit reversal alone, the cumulative effect of the errors may deprive a defendant of a fair trial. *People v. Simmons,* 342 Ill. App. 3d 185, 191 (2003) (citing *People v. Batson,* 225 Ill. App. 3d 157, 169 (1992)). In such cases, due process and fundamental fairness require that the defendant's conviction be reversed and the cause remanded for a new trial. *Id.* (citing *Batson,* 225 Ill. App. 3d at 169). Here, since we have already held that defendant's individual contentions neither warranted reversal nor resulted in prejudice to defendant, the cumulative effect of these contentions also did not deprive him of a fair trial. In addition, we have already concluded that evidence of defendant's guilt was overwhelming. Therefore, we must reject defendant's final claim of error.

¶ 75                                  CONCLUSION

¶ 76    The judgment of the circuit court of Cook County is affirmed.

¶ 77     Affirmed.